UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERASIMO A. INZERILLO, et al.,

                Plaintiffs,

      v.

GREEN TREE SERVICING LLC,

                Defendant.

Case No.  13-cv-06010-MEJ

**ORDER RE: MOTION TO DISMISS AND MOTION TO STRIKE**

Re: Dkt. Nos. 11, 12

## INTRODUCTION

Plaintiffs Erasimo, Angela, and Francesca Inzerillo bring this case against Defendant Green Tree Servicing LLC for alleged violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32 ("RFDCPA"), and related tort claims, based on Defendant's efforts to collect on a consumer debt owed by Francesca Inzerillo.  Plaintiffs Erasimo and Angela Inzerillo are her parents.  Pending before the Court are Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Defendant's Motion to Strike pursuant to Rule 12(f).  Dkt. Nos. 11, 12.  The Court finds this motion suitable for disposition without oral argument and VACATES the April 24, 2014 hearing.  Civ. L.R. 7-1(b).  Having considered the parties' papers, relevant legal authority, and the record in this case, the Court issues the following Order.

## BACKGROUND

The following facts are taken from Plaintiffs' Amended Supplemental Complaint ("ASC"), filed February 25, 2014.  Dkt. No. 10.  Plaintiff Francesca Inzerillo obtained a loan from Bank of America to purchase a single family home.  ASC ¶ 7.  The debt was subsequently transferred to Defendant.  *Id.* ¶ 8.  Defendant began making(?) repeated calls to Plaintiffs, at least 6 times a day and at all hours, for non-payment.[1]  *Id.* ¶ 9.  Francesca spoke to Defendant's representative named Janelle on January 17, 2013, after Janelle had called Plaintiff's mother.  *Id.*  She told Janelle that

---

[1] In their Opposition, Plaintiffs state that Francesca had decided to try to short sale her home and stopped making payments.  MTD Opp'n at 1.

United States District Court
Northern District of California

her mother's name should not be associated with her account and needed to be removed. *Id.* Janelle told Francesca that if she did not receive payment on the account, she would change the locks on the house. *Id.* When Francesca informed Janelle that there was a tenant living in the property, Janelle requested the tenant's name and telephone number so she could call them, and she also wanted to know when the tenants were moving out so Defendant could take ownership. *Id.*

Plaintiffs allege that "[a]s the days went by," Defendant "called more and more." *Id.* ¶ 10. During one call, Janelle transferred Francesca to her supervisor, Renee Martinez, who demanded the name of Francesca's tenants so she could call them regarding the property. *Id.* Renee told Francesca that if she did not pay the amount due by January 30, 2013, she would send an appraiser out to the house. *Id.* When Francesca asked if this person would disturb the occupants, Renee quickly responded, "Yes!" *Id.* When Francesca told Renee that she was "trying to do the right thing" and thought that short selling the property would help her financial situation, Renee told her she "would never approve her short sale and that she was personally going to see that this property gets foreclosed on." *Id.* Later that evening, Francesca received a phone call from her tenant, who stated that she received a phone call from a Renee Martinez who was trying to get in contact with Francesca regarding her mortgage. *Id.* ¶ 11. Defendant also contacted Francesca's tenant two other times, on February 6 and 12, 2013. *Id.*

Francesca's request for a short sale was not approved, and the property was subsequently sold at trustee sale. *Id.* ¶ 12. Despite the trustee sale, Plaintiffs allege that Defendant continues to maintain an account open in Francesca's name, continues to charges fees, and continues to send collection letters. *Id.* As a result of Defendant's collection efforts, Plaintiffs allege they have suffered damages in the form of "anger, anxiety, emotional distress, fear, frustration, upset, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy." *Id.* ¶ 15.

Plaintiffs filed this action on December 31, 2013, alleging causes of action against Defendant for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), invasion of privacy, and violation of the RFDCPA. Compl., Dkt. No. 1. Plaintiffs

1  filed a Supplemental Complaint on January 24, 2014, to add allegations missing from the original

2  version.  Dkt. No. 7.  A month after that, they filed the ASC, dismissing the FDCPA claim and

3  adding two new causes of action for "negligence" and "negligent training and supervision."  Dkt.

4  No. 10.  They allege that Defendant's debt collection practices constituted breach of a duty of care

5  allegedly owed them by Defendant in connection with the collection of the alleged debt.  ASC ¶¶

6  33-39.  Plaintiffs seek punitive damages in addition to actual damages on the three tort claims.

7         Defendant filed the present motions on March 12, 2014.  In the Motion to Dismiss

8  ("MTD"), Defendant argues that the first, third and fourth causes of action in the ASC for

9  "invasion of privacy by intrusion upon seclusion," "negligence" and "negligent training and

10  supervision" should be dismissed with prejudice because they do not contain sufficient factual

11  matter to state a claim to relief that is plausible on its face.  MTD at 1.  Defendant also requests

12  that the Court order Plaintiffs to provide a more definite statement under Rule 12(e) of the claims

13  in the second cause of action for violation of the RFDCPA, because Plaintiffs cite to various

14  provisions of the act, many having multiple and distinct subparts proscribing very different

15  conduct which is not alleged in the ASC.  *Id.* at 2.

16         In the Motion to Strike ("MTS"), Defendant requests that the Court strike Plaintiffs' claim

17  for punitive damages because there are no facts in the ASC supporting findings of malice,

18  oppression or fraud against Defendant.  MTS at 1.  Defendant also argues that punitive damages

19  are not recoverable on a negligence theory, except in limited factual scenarios not alleged here.

20  *Id.*

21         Plaintiffs filed an Opposition to Defendant's Motion to Dismiss (Dkt. No. 16) and an

22  Opposition to Defendant's Motion to Strike (Dkt. No. 17) on March 26, 2014.  Defendant filed a

23  Reply in Support of the MTD ("MTD Reply") on April 2, 2014.  Dkt. No. 19.

                                    **LEGAL STANDARD**

24

25  **A.     Motion to Dismiss**

26         Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a

27  claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a

28  complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."

United States District Court
Northern District of California

3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a

"probability requirement" but mandates "more than a sheer possibility that a defendant has acted

unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations

omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual

allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

non-moving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare Sys.*,

534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v.*

*Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the

basis of a dispositive issue of law").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

required to make "a short and plain statement of the claim showing that the pleader is entitled to

relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.)

"[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652

F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply

recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

to give fair notice and to enable the opposing party to defend itself effectively").  The court must

be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . .

[is] a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

request to amend the pleading was made, unless it determines that the pleading could not possibly

be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

banc) (internal quotation marks and citations omitted).

United States District Court
Northern District of California

4

**B.    Motion to Strike**

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation . . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (internal citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### DISCUSSION

**A.    Motion to Dismiss**

      1.    <u>Invasion of Privacy</u>

In their First Cause of Action, Plaintiffs allege that Defendant interfered with their right to privacy by repeatedly and unlawfully attempting to collect a debt. ASC ¶ 19. Defendant argues that Plaintiffs' privacy cause of action fails because they have not demonstrated that they each had a reasonable expectation of privacy, that Defendant intentionally intruded upon that expectation of privacy, and that its intrusion would be highly offensive to a reasonable person. MTD at 3.

California recognizes four categories of the tort of invasion of privacy: (1) intrusion upon seclusion, (2) public disclosure of private facts, (3) false light in the public eye, and (4) appropriation of name or likeness. *Shulman v. Group W Prods., Inc.*, 18 Cal.4th 200, 214 n. 4 (1998); *Miller v. National Broad. Co.*, 187 Cal. App. 3d 1463, 1482 (1986). An action for invasion of privacy by intrusion upon seclusion has two elements—(1) an intrusion into a private

United States District Court
Northern District of California

5

place, conversation, or matter, (2) in a manner highly offensive to a reasonable person. *Smith v. Capital One Fin. Corp.*, 2012 WL 1669347, at *3 (N.D. Cal. May 11, 2012) (citing *Taus v. Loftus*, 40 Cal.4th 683, 725 (2007); *see also Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."). The intrusion must be intentional. *Capital One*, 2012 WL 1669347, at *3. "In addition, the plaintiff must have had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.* (citing *Shulman*, 18 Cal.4th at 232).

Here, Plaintiffs' allegations, taken as true, establish that Defendant engaged in conduct that courts have recognized as actionable invasion of privacy. Plaintiffs allege that Defendant called Francesca at least six times a day and at all hours, called her parents and tenant, threatened to change the locks on her house, threatened to disturb her tenants, and that a representative threatened that she was personally going to see that her Francesca's property "gets foreclosed on." ASC ¶¶ 9-10. Repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion. *Fausto v. Credigy*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (claim for invasion of privacy adequately stated where defendant made over 90 calls to the plaintiffs' home, refused to identify itself, made harassing statements, and called back immediately after debtor ended call); *Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F. Supp. 2d 1156, 1169 (N.D. Cal. 2003) (debt collector made 200 calls over a 19-month period); *Rowland v. JPMorgan Chase Bank, N.A.*, 2014 WL 992005, at *12 (N.D. Cal. Mar. 12, 2014) (finding plaintiffs stated an invasion of privacy where they alleged that bank representatives contacted them many times over a period of years, were harassing on at least one occasion, and repeatedly threatened plaintiffs with foreclosure); *Panahiasl v. Gurney*, 2007 WL 738642, at *3 (N.D. Cal. Mar. 8, 2007). Further, the improper conduct in knowingly and intentionally pursuing Plaintiffs to force payment of the alleged debt, whether or not it was owed, gives rise to a right to damages for an invasion of privacy. *Panahiasl*, 2007 WL 738642, at *3.

In its Reply, Defendant argues that it is entitled to a qualified economic privilege as a

United States District Court<br/>Northern District of California

6

creditor attempting to protect its economic interest.  MTD Reply at 5.  "In the area of collection practices, a creditor has a qualified privilege to protect its economic interest . . . ."  *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1468 (1990); *see also Bundren v. Superior Ct.*, 145 Cal. App. 3d 784, 789 (1983) ("When one accepts credit, the debtor impliedly consents for the creditor to take reasonable steps to pursue payment even though it may result in actual, though not actionable, invasion of privacy. . . .  In the debtor-creditor situation the right of a debtor to privacy is subject to the right of a creditor to take reasonable steps to collect the debt."  The privilege "may be lost if the creditor uses outrageous and unreasonable means in seeking payment," but "it is not enough that the creditor's behavior is rude or insolent."  *Symonds*, 225 Cal. App. 3d at 1468.  The "applicable test is whether or not the creditor goes beyond all reasonable bounds of decency in attempting to collect the debt."  *Bundren*, 145 Cal. App. 3d at 789.  The Court finds it is unable to make such a determination at this stage in the pleadings.  As the case progresses, Defendant can use discovery to learn the specifics of Plaintiffs' claims and re-assert the privilege, if appropriate.  However, based on Plaintiffs' allegations in their ASC, the Court finds that they have provided enough facts to state a claim for invasion of privacy that is plausible on its face.  Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' First Cause of Action.

### 2.    RFDCPA

In their Second Cause of Action, Plaintiffs allege that the "acts and omissions of Defendants constitute numerous and multiple violations of the RFDCPA, including but not limited to California Civil Code §1788.14(b) & 1788.17 by violating [the Fair Debt Collection Practices Act, §§] 1692b(2)(3), 1692d, 1692e, e(2), and 1692f, f(1)."  ASC ¶ 27.  Defendant does not seek to dismiss Plaintiffs' RFDCPA claim, but it moves for a more definite statement under Rule 12(e).  MTD at 9.  It argues that it should not be required to guess at what specific statutory violations Plaintiffs are asserting, and a more definite statement is warranted so that it knows how to properly admit or deny the allegations pleaded.  MTS at 9-10.

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."

United States District Court
Northern District of California

United States District Court
Northern District of California

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  Under Rule 12(e), "[a] party may move for a more definite statement of a pleading" when it is "so vague or ambiguous that the party cannot reasonably prepare a response."  A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, i.e., so vague that the defendant cannot begin to frame a response.  *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1188 (E.D. Cal. 2010).  The motion must be denied if the complaint is specific enough to notify defendant of the substance of the claim being asserted.  *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ("A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her.").  "The Federal Rules of Civil Procedure anticipate that the parties will familiarize themselves with the claims and ultimate facts through the discovery process."  *Wong v. Am. Servicing Co., Inc.*, 2009 WL 5113516, at *3 (E.D. Cal. Dec. 18, 2009).

Here, the Court finds that Plaintiffs' allegations are sufficient to allow Defendant to ascertain their nature.  The purpose of the RFDCPA is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  Cal. Civ. Code § 1788.1(b).  Under the RFDCPA, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code. § 1788.2(c).  A debt collector violates the act when it engages in harassment, threats, the use of profane language, false simulation of the judicial process, or when it cloaks its true nature as a licensed collection agency in an effort to collect a debt.  Cal. Civ. Code §§ 1788.10–88.18.

Although Defendant argues that it should not be required to guess at what specific statutory violations Plaintiffs are asserting, it is not necessary to guess when Defendant can use discovery "to learn the specifics of the claims being asserted."  *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal

Rules.  Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted.") *see also Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2004 WL 2075445, at *12 (N.D. Cal. Sept. 15, 2004) ("Motions for more definite statement are proper only where a complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted.").  Here, the Court finds that Plaintiff's allegations provide sufficient notice to Defendant of Plaintiffs' claims, and Defendant can use discovery to learn more specifics. Accordingly, the Court DENIES Defendant's Motion for a More Definite Statement as to Plaintiffs' Second Cause of Action.

### 3.   Negligence

In their Third Cause of Action for Negligence, Plaintiffs allege that Defendant's "outrageous, abusive, and intrusive acts . . . constituted negligent infliction of emotional distress." ASC ¶ 30.  They further allege that Defendant's actions constitute negligence "in that Defendants owed Plaintiffs a duty of reasonable care in the collection of the alleged debt, and use of the telephone in an attempt to collect such debts, said duties were breached, and said breach was the proximate cause of damages suffered by Plaintiffs." *Id.* ¶ 33.  Plaintiffs seek "damages from each and every Defendant for the emotional distress suffered as a result of [Defendant's] intentional" torts. *Id.* at 11.

Defendant argues that there are no facts that suggest its actions went beyond the scope of its conventional role as a loan servicer seeking to collect on a debt, and "[t]he fact that Plaintiffs contest the validity of the underlying debt . . . and challenge Green Tree's steps to collect on the debt does not create a special legal duty of care allowing Plaintiffs to assert a negligence claim." MTD at 6-7.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted).  "The legal duty of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated, or (b) an affirmative duty where the person occupies a particular relationship to others." *McGettigan v. Bay Area*

United States District Court
Northern District of California

*Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016-17 (1997).  "The question of the existence of a legal duty of care . . . presents a question of law which is to be determined by the courts alone."  *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 987 (9th Cir. 2000).

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991).  "[L]iability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender."  *Id.* at 1096 (internal quotations and citations omitted).  But "'[n]ormal supervision of the enterprise by the lender for the protection of its security interest in loan collateral is not 'active participation' in the financed enterprise.'"  *Id.* at 1097 (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980)).

Here, even if the Court were to find that Defendant had a special relationship with Plaintiffs, Defendant had no legal duty to engage in fair, honest, and respectful practices in the collection of consumer debts.  *Chaconas v. JP Morgan Chase Bank*, 713 F. Supp. 2d 1180, 1187 (S.D. Cal. 2010).  In *Sepehry-Fard v. Dep't Stores Nat'l Bank*, the plaintiff alleged negligence based on the defendant banks' debt collection efforts.  2013 WL 6574774, at * (N.D. Cal. Dec. 13, 2013).  The court held that the banks' collection efforts did not go "beyond the domain" of a creditor seeking to collect on a debt, and the fact that the plaintiff challenged the banks' steps to collect on the debt did not turn their actions into ones which create a special legal duty of care allowing a plaintiff to assert a negligence claim.  *Id.* at 3.  Here, like in *Sepehry-Fard*, Plaintiffs' allegations show only that Defendant acted as a loan servicer seeking to collect on a debt.  Therefore, the Court concludes that Plaintiffs have failed to allege the type of duty that California courts would find sufficient to state a claim for negligence.  Accordingly, Plaintiffs' negligence claim is DISMISSED WITH PREJUDICE.

4.   <u>Negligent Training and Supervision</u>

In their Fourth Cause of Action for Negligent Training and Supervision, Plaintiffs allege that "Defendant negligently trained and supervised theirs employees and agents as to the

10

United States District Court
Northern District of California

1    performance of their job duties and as a result of such negligent instruction and supervision, the

2    employees/agents while carrying out their job duties caused injury and damage to Plaintiffs." *Id.* ¶

3    39.  Defendant argues that Plaintiffs fail to allege that it knew or should have known that one or

4    more of its employees were unfit to perform their job duties or posed a risk to customers or third

5    parties; thus, they cannot state a claim for negligent training and supervision based on the facts

6    alleged.  MTD at 8.  Although specific employees and their alleged conduct are identified,

7    Plaintiffs do not allege that these employees were unfit to perform their duties or that Defendant

8    believed them to be unfit.  *Id.*

9           California law recognizes the theory that an employer can be liable for negligently hiring,

10   supervising or retaining an unfit employee." *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054

11   (1996).  The reasoning for imposing such liabilities on an employer is that "if an enterprise hires

12   individuals with characteristics which might pose a danger to customers or other employees, the

13   enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees."

14   *Mendoza*, 66 Cal. App. 4th at 815.  An employer may be liable for negligent supervision only if it

15   knows that the employee is "a person who could not be trusted to act properly without being

16   supervised." *Juarez*, 81 Cal. App. 4th at 395 (2000) (internal citations and quotation marks

17   omitted).

18          Here, Plaintiffs allege that Defendant "negligently trained and supervised theirs employees

19   and agents as to the performance of their job duties," and as a result, "the employees/agents while

20   carrying out their job duties caused injury and damage to Plaintiffs."  ASC ¶ 39.  In their

21   Opposition, Plaintiffs argue that "[t]he inferences [sic] that can be drawn from this allegation

22   alone is that since Defendant had negligently trained its employees to collect debts subject to the

23   Rosenthal Act[,] it knew or should have known its employees may be unfit or incompetent to

24   collect debt in compliance with those laws."  MTD Opp'n at 11.  At this stage in the pleadings, the

25   Court finds that Plaintiffs have pleaded enough facts to allow the Court to draw the reasonable

26   inference that Defendant could be liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 663.

27   Plaintiffs are not required to provide detailed factual allegations, and Defendant can use discovery

28   to learn the specifics of the claims being asserted.  Accordingly, Defendant's MTD is DENIED as

1    to Plaintiffs' Negligent Training and Supervision Cause of Action.[2]

2    **B.      Motion to Strike**

3          Defendant seeks to strike the following matter from the ASC:

4          - ¶ 25, p. 8:16-18: "Defendants acted with oppression, fraud, and/or
          malice, thereby entitling Plaintiffs to punitive damages in an amount
5          according to proof and a finder of fact at trial;"

6          - ¶ 37, p. 10:20-21: "Plaintiffs are entitled to punitive damages for
          the actions and omissions of the Defendants as described herein;"

7

8          - ¶ 41, p. 11:15-18: "Defendants acted with oppression, fraud, and/or
          malice, thereby entitling Plaintiffs to punitive damages in an amount
          according to proof and a finder of fact at trial;" and

9

10          - p. 12:3: "...punitive damages,...."

11   MTS at 1.  Defendant argues that Plaintiffs fail to allege any substantive facts to show it acted

12   with oppression, fraud or malice, and the conclusory allegations that punitive damages are

13   recoverable will not suffice.  *Id.* at 2.  Thus, Defendant maintains that any language in the ASC

14   related to Plaintiffs' claims for punitive damages must be stricken.  *Id.*  Defendant further argues

15   that Plaintiffs cannot recover punitive damages on their Third and Fourth Causes of Action

16   because these claims require an allegation that Defendant acted intentionally and with wrongful

17   motive.  *Id.* at 3.  Defendant argues that there are no facts to support the conclusion that Green

18   Tree or its employees knew or had reason to know that its alleged debt collection efforts were

19   wrongful, or that Green Tree's alleged conduct was so extreme as to exceed all bounds of that

20   usually tolerated in a civilized community.  *Id.*  Defendant further argues that there are no

21   allegations to support the conclusion that its employees were "unfit" or acted with "conscious

22   disregard" of Plaintiffs' rights.  *Id.*

23          In response, Plaintiffs argue that their punitive damage allegations meet federal pleading

24   standards because their prayer for damages need only rely on unsupported and conclusory

25   averments of malice or fraudulent intent.  MTS Opp'n at 3-4.  Plaintiffs further argue that they do

26   ───────────────────
27   [2] Defendant also argues that, since it does not owe Plaintiffs a duty of care under a negligence
     cause of action, it cannot be held liable for negligent supervision, either.  MTD at 7.  However,
     while Plaintiffs cannot bring a claim for negligence related to *Defendant's* debt collection
28   activities, it is possible that they can establish a separate claim related to Defendant's training and
     supervision of its *employees*.

1    not need to establish an intent to injure; rather, punitive damages may be awarded where a

2    defendant acted with a conscious disregard of the plaintiff's rights.  *Id.* at 4.

3         The right to recover punitive damages in California is governed by Civil Code section

4    3294, which provides that punitive damages are appropriate where a plaintiff establishes by clear

5    and convincing evidence that the defendant is guilty of (1) fraud, (2) oppression or (3) malice.

6    Cal. Civ. Code § 3294(a)).  Under section 3294(c), "a plaintiff may not recover punitive damages

7    unless the defendant acted with intent or engaged in 'despicable conduct.'"[3]  *In re First Alliance*

8    *Mortg. Co.*, 471 F.3d 977, 998 (9th Cir. 2006).  "The adjective 'despicable' connotes conduct that

9    is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down

10   upon and despised by ordinary decent people."  *Lackner v. North*, 135 Cal. App. 4th 1188, 1210

11   (2006) (internal quotation marks and citations omitted).

12        In federal court, while section 3294 governs the substantive standard Plaintiffs must meet

13   in order to obtain punitive damages, Plaintiffs need not allege facts supporting such a claim with

14   particularity.  *Tamburri v. Suntrust Mortg., Inc.*, 2012 WL 3582924, at *3 (N.D. Cal. Aug. 20,

15   2012); *Taheny v. Wells Fargo Bank, N.A.*, 2011 WL 1466944, at *4 (E.D. Cal. Apr. 18, 2011)

16   ("Although Section 3294 provides the governing substantive law for punitive damages,

17   California's heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the

18   _____

19   [3] Section 3294(c) provides:

20            As used in this section, the following definitions shall apply:

21            (1) "Malice" means conduct, which is intended by the defendant to
             cause injury to the plaintiff or despicable conduct, which is carried
22            on by the defendant with a willful and conscious disregard for the
             rights or safety of others.

23
             (2) "Oppression" means despicable conduct that subjects a person to
24            cruel and unjust hardship in conscious disregard of that persons'
             rights.

25
             (3) "Fraud" means an intentional misrepresentation, deceit, or
26            concealment of a material fact known to the defendant with the
             intention on the part of the defendant of thereby depriving a person
27            of property or legal rights or otherwise causing injury.

28   Cal. Civ. Code § 3294.

United States District Court
Northern District of California

1    Federal Rules of Civil Procedure—the provisions governing the adequacy of pleadings in federal

2    court.") (quoting *Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000)).  "Thus,

3    'in federal court, a plaintiff may include a "short and plain" prayer for punitive damages that relies

4    entirely on unsupported and conclusory averments of malice or fraudulent intent.'"  *Taheny*, 2011

5    WL 1466944, at *4 (quoting *Clark*, 106 F. Supp. 2d at 1019; citing *Somera v. Indymac Fed. Bank,*

6    *FSB*, 2010 WL 761221 (E.D. Cal. Mar. 3, 2010) ("Under federal pleading standards, defendant's

7    argument that plaintiff must plead specific facts to support allegations for punitive damages is

8    without merit.")).

9           Here, the Court finds that Plaintiffs have satisfied the federal pleading standard.  With

10   respect to whether Defendant's actions could provide the basis for an award of punitive damages,

11   courts have found that voluminous and harassing debt collection communications can constitute

12   oppression, malice, or fraud within the meaning of section 3294.  For example, in *Fausto v.*

13   *Credigy Serv. Corp.*, the court held that a reasonable jury could find clear and convincing evidence

14   of malicious, oppressive or fraudulent conduct, sufficient to support an award of punitive

15   damages, where the defendants made at least 90 phone calls to the plaintiffs' residence.  598 F.

16   Supp. 2d 1049, 1057 (N.D. Cal. Feb. 17, 2009).  In *Sanchez v. Client Servs., Inc.*, the debtor

17   plaintiffs testified that the defendant debt collector had made dozens of threatening phone calls in

18   pursuit of an alleged debt.  520 F. Supp. 2d 1149, 1164-65 (N.D. Cal. 2007).  The court held that

19   the issue of whether the defendant's conduct amounted to oppression, fraud, or malice was a

20   credibility determination appropriately reserved for the ultimate trier of fact.  *Id.* at 1165.

21          In the present case, Plaintiffs allege that Defendant called Francesca at least six times a day

22   and at all hours, called her parents and tenant, threatened to change the locks on her house,

23   threatened to disturb her tenants, and that a representative threatened that she was personally going

24   to see that her Francesca's property "gets foreclosed on."  ASC ¶¶ 9-10.  Given the volume of

25   calls, along with Plaintiffs' allegations regarding the harassing and threatening nature of those

26   calls, a reasonable jury could find clear and convincing evidence of malicious, oppressive or

27   fraudulent conduct, sufficient to support an award of punitive damages.  Whether Plaintiffs will be

28   able to prove these allegations is another matter to be resolved at a later date.

United States District Court
Northern District of California

As to Defendant's argument that Plaintiffs' negligence claims require an allegation that Defendant acted intentionally and with wrongful motive, "punitive damages are available to a plaintiff asserting a claim of negligence 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.'" *Allen v. Bayshore Mall*, 2013 WL 6441504, at *4 (N.D. Cal. Dec. 9, 2013) (quoting Cal. Civ. Code § 3294(a). Thus, this argument is without merit. Accordingly, Plaintiffs' ASC satisfies the pleading requirements under Rule 8, and the Court therefore DENIES Defendant's MTS as to the remaining claims.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendant's Motion to Dismiss as to Plaintiff's negligence cause of action. Defendant's Motion to Dismiss and Motion to Strike are DENIED as to all remaining claims.

**IT IS SO ORDERED.**

Dated: April 3, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California