MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
GREEN TREE SERVICING LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| ERASIMO A. INZERILLO; ANGELA INZERILLO; and FRANCESCA INZERILLO,<br><br>    Plaintiffs,<br><br>    vs.<br><br>GREEN TREE SERVICING LLC; and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 3:13-cv-06010-MEJ<br><br>**DEFENDANT GREEN TREE SERVICING LLC'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; POINTS AND AUTHORITIES**<br><br>Filed concurrently with Separate Statement of Undisputed Material Facts; Declaration of Austin B. Kenney; Declaration of Christy Christensen; Declaration of Sara Bailey; [Proposed] Order<br><br>Date:      December 4, 2014<br>Time:      10:00 a.m.<br><br>The Hon. Maria Elena-James, Ctrm. B<br><br>Action Filed:  December 31, 2013<br>Supp. Comp. Filed:  January 24, 2014<br>Sec. Am. Comp. Filed:  February 25, 2014<br>Trial Date:  April 20, 2015 |

**NOTICE**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD AND TO THE**

**COURT: PLEASE TAKE NOTICE** that on December 4, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom B of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Maria-Elena James presiding, defendant GREEN TREE SERVICING LLC ("Green Tree") will and hereby does move for partial summary judgment as to the following claims and defenses:

1) Plaintiffs' first cause of action for invasion of privacy fails as to all Plaintiffs because the undisputed facts demonstrate that Green Tree had a qualified economic privilege to engage in the alleged conduct;

2) The first cause of action for invasion of privacy fails as to plaintiffs ERASIMO A. INZERILLO and ANGELA INZERILLO because there is no evidence to support a finding of "highly offensive" conduct by Green Tree;

3) The second cause of action for violation of the Rosenthal Act by plaintiff FRACESCA INZERILLO fails because the Act does not apply to Ms. Inzerillo, who was not a California resident at the time of the alleged collection activities;

4) The second cause of action for violation of the Rosenthal Act by plaintiffs ERASIMO A. INZERILLO and ANGELA INZERILLO fails because the undisputed facts demonstrate that these Plaintiffs lack standing to sue Green Tree under the Act;

5) Plaintiffs' third cause of action for negligent training and supervision fails as to all Plaintiffs because there is no evidence to support the elements of this cause of action; and

6) Plaintiffs are not entitled to recover punitive damages from Green Tree because there is no evidence to support a finding of oppression, fraud or malice on the part of Green Tree.

Green Tree makes the motion pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rule 56 on the grounds that there are no genuine issues of material fact and that Plaintiffs' claims fail as a matter of law. This motion is based upon this Notice of Motion, the Memorandum

of Points and Authorities, the Separate Statement of Undisputed Material Facts, the Declaration of Austin B. Kenney, the Declaration of Christy Christensen and the Declaration of Sara Bailey filed concurrently herewith, the Court's file herein, and any further evidence which may be presented at the hearing on this motion.

DATED: October 30, 2014

Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation


By:  /s/ Austin B. Kenney
          Austin B. Kenney

Attorneys for Defendant
GREEN TREE SERVICING LLC

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 2

III.    LEGAL STANDARD .......................................................................................... 4

IV.     ARGUMENT ....................................................................................................... 5

        A.    Green Tree Is Entitled to Partial Summary Judgment as to the First Cause of Action for Invasion of Privacy Because the Undisputed Facts Do Not Support Liability. ................................................................................ 5

              1.    Green Tree Is Not Subject to Liability for Invasion of Privacy Because It Had a Qualified Economic Privilege to Pursue the Alleged Debt. ................................................................................ 5

              2.    Green Tree Is Not Liable to Erasimo or Angela Inzerillo for Invasion of Privacy Because the Undisputed Material Facts Show an Insubstantial Impact on Privacy Interests ...................................... 7

        B.    Green Tree Is Entitled to Partial Summary Judgment as to the Second Cause of Action for Violation of the Rosenthal Act Because the Undisputed Facts Do Not Support Liability ............................................. 8

              1.    The Rosenthal Act Does Not Apply to Non-California Residents ............... 9

              2.    The Rosenthal Act Only Applies to "Debtors" Engaged in "Consumer Credit Transactions." ............................................... 10

        C.    Green Tree Is Entitled to Partial Summary Judgment as to Plaintiffs' Third Cause of Action for Negligent Training and Supervision Because the Undisputed Facts Do Not Support Liability ............................................. 12

              1.    California Law Imposes Well-Defined Limits on Employer Liability for Training and Supervising Employees. ..................................... 12

              2.    Green Tree's Employees Are Trained to Comply with State and Federal Consumer Protection Laws, Including the Rosenthal Act and the FDCPA, and Are Consistently Supervised in the Performance of Their Collection Activities. .................................................. 13

              3.    The Are No Facts To Suggest That Any of the Employees Involved with Francesca Inzerillo's Account Were Negligently Trained or Supervised. .................................................................. 14

        D.    Green Tree Is Entitled to Partial Summary Judgment as to Plaintiffs' Prayers for Punitive Damages in the First and Third Causes of Action Because the Undisputed Facts Do Not Support Liability. ...................................... 16

              1.    Plaintiffs Cannot Recover Punitive Damages Because There Is No Evidence of Malice, Oppression or Fraud ......................................... 16

DEFENDANT GREEN TREE SERVICING LLC'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT; POINTS AND AUTHORITIES

2.      Plaintiffs Cannot Recover Punitive Damages Because There Is No Evidence of Deliberate Intent to Harm ........................................................ 18

V. CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abels v JBC Legal Group, PC.*
    428 F.Supp.2d 1023 (N.D. Cal. 2005) .................................................................11

*Allen v. Bayshore Mall,*
    2013 WL 6441504 (N.D. Cal. Dec. 9, 2013) ......................................................19

*Am. Nurses' Assn. v. State of Illinois,*
    783 F.2d 716 (7th Cir. 1986)................................................................................4

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).............................................................................................4

*Beal Bank, SSB v. Pittorino,*
    177 F.3d 65 (1st Cir. 1999) .................................................................................4

*BMW of North America, Inc. v. Gore,*
    517 U.S. 559 (1996)............................................................................................9

*Bundren v. Super. Ct.,*
    145 Cal. App. 3d 784 (1983).......................................................................5, 6, 7

*Castellanos v. JPMorgan Chase & Co.,*
    2009 WL 1833981 (S.D. Cal., June 23, 2009) ...................................................8

*Celotex Corp. v. Catrett,*
    417 U.S. 317 (1986)......................................................................................4, 16

*Deteresa v. Am. Broad. Cos., Inc.,*
    121 F.3d 460 (9th Cir.1997 ............................................................................7, 8

*Doe v. Capital Cities,*
    50 Cal. App. 4th 1038 (1996)...........................................................................12

*Edeh v. Midland Credit Mgmt., Inc.,*
    748 F. Supp. 2d 1030 (D. Minn. 2010) .........................................................9, 10

*Federico v. Super. Ct.,*
    59 Cal. App. 4th 1207 (1997)...........................................................................12

*In re First Alliance Mortg. Co.,*
    471 F.3d 977 (9th Cir..2006)............................................................................16

*Garcia v. Fortis Capital IV, LLC,*
    2014 WL 1813295 (N.D. Cal. May 6, 2014) ....................................................15

*Gouskos v. Aptos Village Garage, Inc.*,
    94 Cal.App.4th 754 (2001) ...................................................................................10, 11

*Grieves v. Superior Ct.*,
    157 Cal.App.3d 159 (1984) .............................................................................................18

*Hasson v. Ford Motor Co.*,
    32 Cal.3d 388 (1982) .......................................................................................................19

*Hill v. National Collegiate Athletic Assn.*,
    7 Cal.4th 1 (1994) ..............................................................................................................7

*Inzerillo v. Green Tree Servicing LLC*,
    2014 WL 1347175, at *4 (N.D. Cal. Apr. 3, 2014) ........................................... *passim*

*Juarez v. Boy Scouts of America, Inc.*,
    81 Cal.App.4th 377 (2000) .............................................................................................12

*Kleiman v. Equable Ascent*,
    2013 WL 49754 (C.D. Cal. Jan. 3, 2013) ........................................................................7

*Lackner v. North*,
    135 Cal.App. 4th 1188 (2006) ........................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
    475 U.S. 574, 586 (1986) ..................................................................................................4

*McEndree v. Rash Curtis & Associates*,
    2012 WL 1640465 (E.D. Cal. May 9, 2012) ....................................................................8

*Mendoza v. City of Los Angeles*,
    66 Cal. App. 4th 1333 (1998) .........................................................................................12

*Pasquale v. Law Offices of Nelson & Kennard*,
    940 F.Supp.2d 1151 (N.D. Cal. 2013) ...........................................................................16

*Pollock v. Bay Area Credit Service, LLC*,
    2009 WL 2475167 (S.D. Fla. Aug. 13, 2009) ............................................................9, 10

*Quinlan v. CitiMortgage, Inc.*,
    2012 WL 2401380 (E.D. Cal. June 22, 2012) ..................................................................8

*Shulman v. Group W Prods., Inc.*,
    18 Cal.4th 200 (1998) ........................................................................................................7

*Smith v. Capital One Fin. Corp.*,
    2012 WL 1669347 (N.D.Cal. May 11, 2012) ..................................................................7

*Symonds v. Mercury Sav. & Loan Ass'n*,
    225 Cal.App.3d 1458 (1990) .....................................................................................5, 6, 7

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987)...................................................................................4

*Taus v. Loftus*,
    40 Cal.4th 683 (2007).....................................................................................7

*Turnbull v. American Broadcasting Cos.*,
    2004 WL 2924590 (C.D. Cal., Aug. 19, 2004) .............................................8

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    865 F.2d 1539 (9th Cir. 1989) ......................................................................4

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006).........................................................................4

*Wilkins v. National Broadcasting Co.*,
    71 Cal. App. 4th 1066, 1076 (1999)..............................................................8

*Yu v. Signet Bank/Virginia*,
    69 Cal. App. 4th 1377 (1999) .......................................................................9

**STATUTES**

United States Code
    Title 15
            § 1692b..........................................................................................6, 8
            § 1692c..........................................................................................6, 8
            § 1692d................................................................................................8
            § 1692e................................................................................................8
            § 1692f................................................................................................8

Cal. Civil Code
            § 1788.2......................................................................................10, 11
            § 1788.12.............................................................................................6
            § 1788.14.............................................................................................8
            § 1788.17.............................................................................................8
            § 1788.30...........................................................................................11
            § 3294 ...........................................................................................16-18

Federal Rule of Civil Procedure
    Rule 56 ...............................................................................4, 7, 10, 16

**OTHER AUTHORITIES**

13A Cal. Jur. 3d *Consumer and Borrower Protection Laws* § 532 (2009).....................................10

Fair Debt Collection Practices Act ("FDCPA")...................................................................9, 13

Rosenthal Act ............................................................................................... *passim*

DEFENDANT GREEN TREE SERVICING LLC'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT; POINTS AND AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendant GREEN TREE SERVICING LLC ("Green Tree") is a mortgage loan servicer. It serviced a loan obtained by plaintiff FRANCESCA INZERILLO. When Ms. Inzerillo defaulted on her loan, Green Tree undertook reasonable, good faith efforts to resolve the account, including calling Ms. Inzerillo to discuss the account and working with her toward a potential short sale. It also contacted Ms. Inzerillo's parents, plaintiffs ERASIMO A. INZERILLO and ANGELA INZERILLO, and others when she did not answer or respond to Green Tree's calls.

Plaintiffs brought this lawsuit in December 2013, challenging Green Tree's collection efforts. The operative Second Amended Supplemental Complaint ("Complaint") includes causes of action for: (1) invasion of privacy; (2) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"); (3) negligent training and supervision of Green Tree's employees; (4) violation of the Fair Credit Reporting Act; and (5) violation of the Consumer Credit Reporting Agencies Act. Plaintiffs seek actual, statutory and punitive damages.

Green Tree moves for partial summary judgment on several grounds. First, Green Tree is not subject to liability for invasion of privacy because its alleged conduct was privileged as a matter of law. Second, there is no evidence of "highly offensive" conduct by Green Tree to support the first cause of action as to Erasimo and Angela Inzerillo. Third, the Rosenthal Act does not apply to Francesca Inzerillo because she was not a California resident at the time of the alleged collection activities. Fourth, Erasimo and Angela Inzerillo lack standing to sue for violation of the Rosenthal Act because they are not "debtors" subject to the Act's protection. Fifth, Plaintiffs have no evidence to support their third cause of action for negligent training and supervision, and Green Tree's evidence, which is indisputable, obviates liability. Sixth, and finally, there is no evidence of "oppression, fraud or malice" to support an award of punitive damages against Green Tree under any cause of action.

There is no genuine issue of material fact underlying this motion. Green Tree is entitled to partial summary judgment as to the foregoing issues accordingly. Fed. R. Civ. P. 56(a).

Green Tree is a mortgage loan servicer. Separate Statement of Undisputed Material Facts ("SSUMF"), ¶ 1. In December 2011, it began servicing a mortgage loan Francesca Inzerillo obtained from Bank of America, referenced by Account No. 68320768. *Id*. at ¶ 2. There were no co-borrowers on this loan. *Id*.

When Francesca Inzerillo stopped paying her mortgage in January 2013, Green Tree reached out to her to try to resolve the account. SSUMF, ¶¶ 4-7. She admits that she owed a debt to Green Tree and that she had an expectation that Green Tree would call her to try to secure payment of her debt. *Id*. at ¶ 3. Most of the time, however, Ms. Inzerillo did not answer or return Green Tree's calls. *Id*. at ¶ 8.

Plaintiffs Erasimo and Angela Inzerillo, who are Ms. Inzerillo's parents, were not parties to the loan. SSUMF, ¶¶ 9-10. For that matter, they have never had an open account with Green Tree or otherwise been indebted to Green Tree, and they have not alleged otherwise. *Id*. at 11; Compl., ¶ 4. Green Tree never attempted to collect a debt from them or told them that they owed money to Green Tree. *Id*. However, on December 12, 2011, Ms. Inzerillo gave Green Tree verbal authorization to contact Angela Inzerillo regarding the account. *Id*. at ¶ 12.

On occasion, when Ms. Inzerillo did not answer or return Green Tree's calls, Green Tree reached out to third parties, including her parents and her tenant, in order to locate her.[1] SSUMF, ¶ 13. These persons never verified Ms. Inzerillo's location information for Green Tree. SSUMF, ¶ 16. Most of the time, they did not answer or return Green Tree's calls. *Id*. at ¶ 15. In fact, Ms. Inzerillo's parents ignored most of the calls. *Id*. Additionally, they denied that the content of any of Green Tree's communications with them was offensive. *Id*. at ¶ 17.

On February 21, 2013, Ms. Inzerillo advised Green Tree that she was represented by

---

[1] Third-parties were located by "skip-tracing", which involves using an outside source or proprietary system to locate the contact by cross-referencing names, addresses or phone numbers believed to have been associated with the customer. SSUMF, ¶ 14. Skip-tracing is a commonly-used method in the industry to locate third-party contacts. *Id*.

counsel. SSUMF, ¶ 18. Green Tree immediately placed a temporary hold on her account until it could verify her representation, which it did five days later. *Id*. Green Tree has not placed any calls to Ms. Inzerillo, her parents or her tenant since February 21, 2013. *Id*. at ¶ 19.

In or about late May 2014, Green Tree received notice of a dispute by Ms. Inzerillo regarding information Green Tree reported to the major credit bureaus in connection with her account. Specifically, Ms. Inzerillo disputed the current balance reported by Green Tree. She contended that the reporting should reflect a $0 balance because the subject property was sold at a foreclosure sale in October 2013. SSUMF, ¶ 35.

Green Tree promptly investigated the dispute by reviewing pertinent information related to Ms. Inzerillo's account, including the payment history and credit reporting history. SSUMF, ¶ 36. Green Tree determined that, in accordance with Green Tree's policies and procedures, the account was still open and showed a balance due because the property was awaiting re-sale in Green Tree's Repossession Department. *Id*. at ¶ 37-38. Green Tree sent a letter to Ms. Inzerillo on June 14, 2014 that reflected this information.[2] *Id*. at ¶ 39. Green Tree did not intentionally misstate the status of the account or the results of its investigation in the letter to Ms. Inzerillo. *Id*. at ¶¶ 40-42. Moreover, Green Tree subsequently took steps to address Ms. Inzerillo's concerns regarding the credit reporting. *Id*. at ¶ 43. The reporting now reflects that the foreclosure is complete and Ms. Inzerillo's account is closed and reflects a $0 balance and $0 payment due. *Id*.

Ms. Inzerillo did not reside in California while the alleged collection and credit reporting activities in this case occurred. SSUMF, ¶ 44. In fact, she has not resided in California since approximately June 2009. *Id*. She currently resides in Wilmington, Delaware. *Id*. She has been gainfully employed while residing outside California. *Id*. at ¶ 45.

---

[2] The letter states, in part, "A foreclosure sale has not yet been completed for the property associated with this account. Thus, you are still obligated for the debt under the terms of the enclosed account. Because the account is still undergoing the foreclosure process, the account remains open." The letter further stated that "the information reported regarding the above-referenced account is true and correct according to account records." This was a true statement, based on the credit bureau dispute history for Ms. Inzerillo's account and Green Tree's reporting practices then in effect. SSUMF, ¶ 39.

## III.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Furthermore, a trial court may grant summary judgment as to "each claim and defense" (*or each part thereof*) on which summary judgment is sought. Fed. R. Civ. P. 56(a); *see Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999). This is referred to as "partial summary judgment," and the same standards under Rule 56 apply. *Am. Nurses' Assn. v. State of Illinois*, 783 F.2d 716, 729 (7th Cir. 1986); Fed. R. Civ. P. 56(a).

Summary judgment (or partial summary judgment) shall be entered

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 417 U.S. 317, 322 (1986). The moving party may carry its burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The pleadings define the scope of summary judgment. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 990-92 (9th Cir. 2006). However, when the moving party meets its burden, the nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). The non-moving party must but produce "significant probative evidence" supporting those allegations. "A 'scintilla of evidence,' or evidence that is 'merely colorable' . . . is not sufficient to present a genuine issue as to a material fact." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (*en banc*) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)).

Plaintiffs cannot muster significant probative evidence to support the claims addressed below, and Green Tree's evidence confirms that it bears no liability on these issues. The Court must adjudicate the issues in favor of Green Tree accordingly.

## IV.

## ARGUMENT

**A. Green Tree Is Entitled to Partial Summary Judgment as to the First Cause of Action for Invasion of Privacy Because the Undisputed Facts Do Not Support Liability.**

In their first cause of action, Plaintiffs allege that Green Tree invaded their right to privacy by "repeatedly and unlawfully attempting to collect a debt," by "repeatedly contacting them and Plaintiff's tenant on this debt," and by "engaging in highly offensive conduct in the course of collecting this debt." Compl., ¶¶ 19-21. As a matter of law, Green Tree had a qualified privilege to engage in the sort of conduct at issue here. Moreover, there is no evidence to support the conclusion that Green Tree's conduct with respect to Erasimo and Angela Inzerillo was "highly offensive". Therefore, Green Tree cannot be liable to them as a matter of law. It is entitled to partial summary judgment accordingly.

**1. Green Tree Is Not Subject to Liability for Invasion of Privacy Because It Had a Qualified Economic Privilege to Pursue the Alleged Debt.**

As this Court has recognized, "[i]n the area of collection practices, a creditor has a qualified privilege to protect its economic interest . . . ." *Inzerillo v. Green Tree Servicing LLC*, No. 13-CV-06010-MEJ, 2014 WL 1347175, at *4 (N.D. Cal. Apr. 3, 2014) (citing *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal.App.3d 1458, 1468 (1990)) (internal quotations omitted); *Bundren v. Super. Ct.*, 145 Cal. App. 3d 784, 789 (1983) ("When one accepts credit, the debtor impliedly consents for the creditor to take reasonable steps to pursue payment even though it may result in actual, though not actionable, invasion of privacy. . . . In the debtor-creditor situation the right of a debtor to privacy is subject to the right of a creditor to take reasonable steps to collect

DEFENDANT GREEN TREE SERVICING LLC'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT; POINTS AND AUTHORITIES

the debt.").[3] "[I]t is not enough that the creditor's behavior is rude or insolent." *Inzerillo*, 2014 WL 1347175, at *4 (quoting *Symonds*, 225 Cal.App.3d at 1468) (emphasis added). The "applicable test is whether or not the creditor goes beyond *all reasonable bounds of decency* in attempting to collect the debt." *Id*. (citing *Bundren*, 145 Cal. App. 3d at 789) (emphasis added).

Green Tree had a qualified privilege to engage in the collection activities alleged here. Ms. Inzerillo owed a mortgage debt to Green Tree. SSUMF, ¶¶ 1-3. Green Tree was authorized by statute to contact Ms. Inzerillo and encourage her to pay, as well to contact third parties, such as her parents and tenant, to locate her when she was unresponsive. Cal. Civ. Code § 1788.12; 15 U.S.C. §§ 1692b, 1692c. Additionally, Ms. Inzerillo gave Green Tree authorization to contact her mother, Angela Inzerillo, regarding the account. SSUMF, ¶ 12.

The alleged conversations Green Tree had with Ms. Inzerillo show exactly the type of "inconvenience and embarrassment" contemplated in *Bundren*. 145 Cal. App. 3d at 789. For example, Plaintiffs allege that Green Tree's employees told Ms. Inzerillo that "if she doesn't receive payment on this account that she would change the locks on Plaintiff's house"; that an appraiser might be sent to the property and could disturb the occupants; and that her property would be foreclosed on if she did not make her payments. Compl., ¶¶ 9-10. These are just the kinds of experiences to which *Bundren* refers when it discusses the creation of "concern and worry in the mind of the debtor in order to induce payment." *Bundren*, 145 Cal.App.3d at 789.

On the other hand, most of the time, Erasimo and Angela did not answer or return Green Tree's calls. SSUMF, ¶ 15. In fact, they ignored most of the calls. *See id*. They also have denied

---

[3] The *Bundren* court further observed:

> "In this area of the developing law, the business community must be given some latitude to pursue reasonable methods of collecting debts even though such methods often might result in some inconvenience or embarrassment to the debtor. . . . Debtors cannot object to some inconvenience in connection with their creditor's efforts to collect a debt. It has been held that debtors' tender sensibilities are protected only from oppressive, outrageous conduct. . . ."

*Bundren*, 145 Cal. App. 3d at 789.

that the content of any of Green Tree's communications with them was offensive. *Id*. at ¶ 17.

Thus, the calls to Ms. Inzerillo's parents did not rise above the level of inconvenience or

embarrassment, either.

Even construing Green Tree's statements to Ms. Inzerillo to be "rude or insolent", none of

the Plaintiffs can make a minimum showing at trial that anything Green Tree said or did exceeded

"all reasonable bounds of decency" by any objective measure, no matter how embarrassed or

inconvenienced they might have been as a result of the alleged debt collection activities. On the

contrary, the facts alleged in the Complaint and borne out in discovery present a classic case of the

type of communications protected by the economic privilege, pursuant to *Bundren* and *Symonds*.

Green Tree is entitled to partial summary judgment on the issue of economic privilege

accordingly. Fed. R. Civ. Proc. 56.

### 2. Green Tree Is Not Liable to Erasimo or Angela Inzerillo for Invasion of Privacy Because the Undisputed Material Facts Show an Insubstantial Impact on Privacy Interests.

This Court previously held that

> An action for invasion of privacy by intrusion upon seclusion has
> two elements—(1) an intrusion into a private place, conversation, or
> matter, (2) in a manner *highly offensive to a reasonable person*.
> *Smith v. Capital One Fin. Corp.*, No. C 11–3425 PJH, 2012 WL
> 1669347, at *3 (N.D.Cal. May 11, 2012) (citing *Taus v. Loftus*, 40
> Cal.4th 683, 725 (2007); see also *Deteresa v. Am. Broad. Cos., Inc.*,
> 121 F.3d 460, 465 (9th Cir.1997) ("One who intentionally intrudes,
> physically or otherwise, upon the solitude or seclusion of another or
> his private affairs or concerns, is subject to liability to the other for
> invasion of his privacy, if the intrusion would be highly offensive to
> a reasonable person.").

*Inzerillo v. Green Tree Servicing LLC*, No. 13-CV-06010-MEJ, 2014 WL 1347175, at *3 (N.D.

Cal. Apr. 3, 2014) (emphasis added).

"The requirement that an intrusion be *highly offensive* is an important limit on the tort of

invasion of privacy because it prevents this tort from 'becoming an all-encompassing and always

litigable assertion of individual right.' " *Kleiman v. Equable Ascent*, No. CV 12-9729 CAS

AJWX, 2013 WL 49754, at *3 (C.D. Cal. Jan. 3, 2013) (emphasis added) (quoting *Hill v. National

Collegiate Athletic Assn.*, 7 Cal.4th 1, 25 (1994)); *Shulman v. Group W Prods., Inc.*, 18 Cal.4th

200, 232 (1998). "While what is 'highly offensive to a reasonable person' suggests a standard

upon which a jury would properly be instructed, there is a preliminary determination of 'offensiveness' which must be made by the court in discerning the existence of a cause of action for intrusion." *Turnbull v. Am. Broad. Cos.*, No. CV 03-3554 SJO(FMOX)), 2004 WL 2924590, at *13 (C.D. Cal., Aug. 19, 2004) (quoting *Wilkins v. Nat'l. Broad. Co.*, 71 Cal. App. 4th 1066, 1076 (1999).  A claim that contacts were highly offensive may be "dismissed as a matter of law 'if the undisputed material facts show . . . an insubstantial impact on privacy interests.' " *Quinlan v. CitiMortgage, Inc.*, No. 2:11-CV-00986-MCE, 2012 WL 2401380, at *5 (E.D. Cal. June 22, 2012) (quoting *Deteresa*, 121 F.3d at 465).

The only specific allegations regarding Green Tree's alleged conduct with respect to Erasimo and Angela Inzerillo is that Green Tree "repeatedly" called them and that on at least one occasion, Green Tree called Mrs. Inzerillo "twice during the day".  Compl., ¶¶ 9, 10, 13. Fatally, these Plaintiffs have denied that the content of any of Green Tree's communications with them was offensive.   SSUMF, ¶ 17.  Most of the time, they did not even answer or return Green Tree's calls.  *Id.* at ¶ 15.  In fact, they ignored most of the calls.  *See id.*

These facts show "an insubstantial impact on privacy interests" as a matter of law.  *See Castellanos v. JPMorgan Chase & Co.*, No. 09-CV-00969-H, 2009 WL 1833981 (S.D. Cal., June 23, 2009) (allegations regarding call volume "without more is not enough to state a claim for invasion of privacy above a speculative level"); *McEndree v. Rash Curtis & Associates*, No. 2:10-CV-01079-MCE, 2012 WL 1640465 (E.D. Cal. May 9, 2012) ("circumstances where Plaintiff was free to disregard the calls and not even answer since he was able to ascertain that it was [defendant] attempting to contact him" deemed "plainly insufficient to state an actionable invasion of privacy claim").  Green Tree is entitled to partial summary judgment as to these Plaintiffs' claim for invasion of privacy as a result.  Fed. R. Civ. P. 56(a).

**B.    Green Tree Is Entitled to Partial Summary Judgment as to the Second Cause of Action for Violation of the Rosenthal Act Because the Undisputed Facts Do Not Support Liability.**

In their second cause of action, Plaintiffs sue Green Tree for violation of the Rosenthal Act, alleging that Green Tree's collection activities violated "California Civil Code §1788.14(b) & 1788.17 by violating 1692b(2)(3), 1692d, 1692e, e(2), and 1692f, f(1)."  Compl., ¶ 27 (citing

provisions of the federal Fair Debt Collection Practices Act ("FDCPA")).  As Green Tree will

show, Green Tree is not subject to liability under the Act for two reasons.  First, the Act does not

apply to Francesca Inzerillo because she was not a California resident when the alleged collection

activities occurred.  Second, Erasimo and Angela Inzerillo lack standing to sue under the Act

because they are not "debtors" subject to the Act's protection. Fed. R. Civ. P. 56(a).

**1.      The Rosenthal Act Does Not Apply to Non-California Residents.**

The Rosenthal Act does not afford protection to all plaintiffs.  It does not apply

"extraterritorially," as a matter of law.  This is true in two respects.

First, the Rosenthal Act does not apply to *conduct* that occurs outside the state.  *Yu v.*

*Signet Bank/Virginia*, 69 Cal. App. 4th 1377, 1396 (1999) (specifically declining to apply

Rosenthal Act to "conduct outside California").[4]  Second, and more importantly here, it does not

apply to *individuals* residing outside California.  *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp.

2d 1030, 1037 (D. Minn. 2010), aff'd, (8th Cir. 2011) 413 Fed.Appx. 925 (holding that Rosenthal

Act does not protect non-Californians from violations of the FDCPA, regardless of where the

defendant is located)[5]; *cf. Pollock v. Bay Area Credit Service, LLC*, No. 08-61101-CIV, 2009 WL

2475167, at *10–11 (S.D. Fla. Aug. 13, 2009) (declining on motion for summary judgment to

"extend the protections of California law to a Florida resident who received calls that originated

---

[4] In *Signet*, California residents sued a creditor who obtained deficiency judgments against them in Virginia for abuse of process and Rosenthal Act violations, among other claims.  The appellate court upheld summary judgment in favor of the defendant on the grounds that the Act did not apply to the collection activities that took place in Virginia.  The court explained, "In our view, none of these statutes was meant to govern conduct outside of California. . . . ¶ . . . To construe these statutes in the manner appellants advocate could make them the kind of extraterritorial legislation the United States Constitution forbids.  (*See* [*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996)] [no state can "impose its own policy choice" on others, or " 'legislate except with reference to its own jurisdiction' "].) . . .  Accordingly, *we decline to interpret these statutes to apply to conduct outside California*."  69 Cal.App.4th at 1396-97 (emphasis added).

[5] In *Edeh*, a Minnesota resident sued a defendant under the Rosenthal Act due to collection and credit reporting activities that originated in Arizona.  The court found the defendant liable under the FDCPA, but declined to extend liability under Rosenthal specifically because the plaintiff was not a California resident.  748 F. Supp. 2d at 1037.  It also found no liability under the Rosenthal Act for the credit reporting claims, ruling, "even if the Rosenthal Act was intended to protect non-Californians from violations of the FDCPA committed by Californians, Edeh was not injured by a violation of the FDCPA committed by a Californian."  *Id.*

from Atlanta, Georgia").

Such is the case here. Francesca Inzerillo alleges collection and credit reporting activities by Green Tree starting in January 2013 and continuing through June 2014. However, like the plaintiff in *Edeh*, she did not reside in California while the alleged collection and credit reporting activities (some of which originated outside California) occurred. SSUMF, ¶ 44. The Rosenthal Act therefore does not apply. *See Edeh*, 748 F. Supp. 2d at 1037; *Pollock*, 2009 WL 2475167, at *10–11[6]. Green Tree is entitled to partial summary judgment accordingly. Fed. R. Civ. P. 56.

### 2. The Rosenthal Act Only Applies to "Debtors" Engaged in "Consumer Credit Transactions."

Just as the Rosenthal Act does not afford protection to all plaintiffs, it does not protect against all consumer transactions. The type of transaction and persons protected are closely regulated by the Act's requirement of a "consumer credit transaction."[7] Cal. Civ. Code § 1788.2.

---

[6] The court's reasoning in *Pollack* is instructive:

> The Court would note that commentary on the Rosenthal Act's protection discusses it in terms of debt collection within the state: "Notwithstanding the state provisions governing debt collection practices in California, in general every debt collector collecting or attempting to collect a consumer debt *in the state* is required by state law to also comply with the federal provisions, subject to specified, limited exceptions." 13A Cal. Jur. 3d *Consumer and Borrower Protection Law*s § 532 (2009) (emphasis added). . . . [T]he Court finds that the Act is meant to protect California consumers and not necessarily to prohibit violations by collection agencies with their headquarters located in the state but carrying out actions elsewhere. Plaintiff has not pointed to, and the Court has not located, any case standing for the proposition that the Rosenthal Act may apply to an out-of-state plaintiff/debtor against a California-based debt collector that pursued claims from locations outside of California. The Court declines to extend the protections of California law to a Florida resident who received calls that originated from Atlanta, Georgia. Therefore, Plaintiff's Motion will be denied, Defendant's Motion granted, and the Rosenthal Act claim shall be dismissed.

*Pollack*, 2009 WL 2475167, at *12.

[7] The court in *Gouskos v. Aptos Village Garage, Inc.*, 94 Cal.App.4th 754, 759 (2001), explains that this analysis

(footnote continued)

1    The Act's narrow definition excludes certain consumer debts from regulation.  *See, e.g., Abels v*

2    *JBC Legal Group, PC*. 428 F.Supp.2d 1023 (N.D. Cal. 2005) (no RFDCPA claim where

3    dishonored checks did not arise "by reason of a consumer credit transaction"); *Gouskos v. Aptos*

4    *Village Garage, Inc.*, 94 Cal.App.4th 754, 759 (2001) (automobile repair expenses were not

5    subject to the Act because the Act requires "a transaction where a person acquires property or

6    services on credit").

7    Similarly, the Act's narrow definition of "consumer credit transaction" limits its protection

8    to the consumer who entered into the transaction—i.e. the "debtor."  A "debtor" is someone "from

9    whom a debt collector seeks to collect a consumer debt *which is due and owing or alleged to be*

10   *due and owing from such person*."  Cal. Civ. Code § 1788.2(h).  Importantly, the Act only affords

11   remedies to "debtors."  *Id*. at § 1788.30.

12   Erasimo and Angela Inzerillo lack standing to sue Green Tree under the Rosenthal Act

13   because they have not entered into a consumer credit transaction with Green Tree and are not

14   "debtors" subject to the Act's protection.  Plaintiffs actually admit as much in the Complaint:

15             Plaintiff FRANCESCA INZERILLO is a natural person from whom
           a debt collector sought to collect a consumer debt which was due
16         and owing or alleged to be due and owing from Plaintiff and is
           "debtor" as that term is defined by California Civil Code
17         § 1788.2(h). Plaintiffs ERASIMO A. INZERILLO AND ANGELA
           INZERILLO are the parents of Plaintiff FRANCESCO
18         INZERILLO.

19   _____

20             depends upon the interplay of several definitions found in 1788.2.
           "The term 'debt collector' means any person who, in the ordinary
21         course of business, regularly, on behalf of himself or herself or
           others, engages in debt collection. . ."  (§ 1788.2, subd. (c))  "The
22         term 'debt collection' means any act or practice in connection with
           the collection of consumer debts."  (§ 1788.2, subd. (b).)    "The
23         terms 'consumer debt' and 'consumer credit' mean money, property
           or their equivalent, *due or owing or alleged to be due or owing from*
24         *a natural person by reason of a consumer credit transaction*."  (§
           1788.2, subd. (f).)  "The term 'consumer credit transaction' means a
25         transaction between a natural person and another person in which
           property, services or money is acquired on credit *by that natural*
26         *person from such other person* primarily for personal, family, or
           household purposes."  (§ 1788.2, subd. (e), italics added.).

27   (Emphasis added.)

28

DEFENDANT GREEN TREE SERVICING LLC'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT; POINTS AND AUTHORITIES

Compl., ¶ 4.  Indeed, Mr. and Mrs. Inzerillo were not parties to their daughter's loan.  SSUMF, ¶ 10.  They also have never obtained a loan or borrowed money from Green Tree and that Green Tree never attempted to collect money from either of them.  SSUMF, ¶¶ 11.  Thus, the undisputed facts show that they are not "debtors" under the Rosenthal Act.  Green Tree is entitled to partial summary judgment as to their Rosenthal claims.  Fed. R. Civ. P. 56(a).

**C.  Green Tree Is Entitled to Partial Summary Judgment as to Plaintiffs' Third Cause of Action for Negligent Training and Supervision Because the Undisputed Facts Do Not Support Liability.**

Plaintiffs allege that Green Tree "negligently trained and supervised theirs employees and agents as to the performance of their job duties," and as a result, "the employees/agents while carrying out their job duties caused injury and damage to Plaintiffs."  Compl., ¶ 30.  They do not allege how Green Tree did this; and, as Green Tree will show, they cannot prove it.  Green Tree is entitled to partial summary judgment as to this claim.  Fed. R. Civ. P. 56(a).

**1.  California Law Imposes Well-Defined Limits on Employer Liability for Training and Supervising Employees.**

"California law recognizes the theory that an employer can be liable for negligently hiring, supervising or retaining an unfit employee."  *Inzerillo*, 2014 WL 1347175, at *3 (citing *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996)).  However, "there can be *no liability* for negligent supervision 'in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised.' "  *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal.App.4th 377, 395 (2000) (emphasis added) (internal citations and quotation marks omitted); *see also Inzerillo*, 2014 WL 1347175, at *3 (citing *Juarez*).  Similarly, employers are protected from retaining alleged unfit workers unless the "employer knows, or should know, facts which would warn [a] reasonable person that [an] employee presents undue risk of harm to third persons in light of particular work to be performed."  *Federico v. Super. Ct.*, 59 Cal. App. 4th 1207, 1214 (1997); *see also Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (no liability unless the "enterprise hires individuals with characteristics which might pose a danger to customers or other employees").

**2. Green Tree's Employees Are Trained to Comply with State and Federal Consumer Protection Laws, Including the Rosenthal Act and the FDCPA, and Are Consistently Supervised in the Performance of Their Collection Activities.**

Christy Christensen, Green Tree's Regional Manager in charge of the company's Collectors, describes the following training used by Green Tree to ensure compliance with state and federal debt collection laws:

> Each of Green Tree's employees responsible for collecting delinquent accounts (generally referred to collectively as "Collectors", but including managers and directors at all levels) undergoes significant training and supervision in the performance of their work. The initial training provided to the Collectors consists of approximately one week in a classroom environment where dedicated personnel from the company's Compliance Department instruct the Collectors on such matters as how to use proprietary collection systems (like Green Tree's telephone and computer systems), the manner in which communications with customers and third parties should be conducted, the proper documentation of communications related to accounts, the content of the Rosenthal Act and its federal counterpart, the loss mitigation process as it relates to customer accounts, general legal compliance, and Green Tree's policies and procedures related to each of these subject matters. This training includes interactive mentoring and testing on training materials.

> Collectors receive follow-up training and testing on the same subjects covered in the initial session within 30 days. They—like all company employees—are also provided a hard copy training manual broken down into "modules," which covers all subjects addressed in the initial training. Employees can also access the training materials, as well as the company's policies and procedures, online. They are actually expected to do so if they have a question regarding handling of a particular account.

> Following the initial training session, new Collectors undergo on-the-job training, called "side-by-sides," during which Collectors "shadow" (i.e., work one-on-one with) Lead Collectors or Collection Managers to field and place calls on their accounts. This training also includes interactive mentoring by the senior employees regarding protocols for handling accounts.

> Established and veteran employees companywide perform ongoing training via online "modules" covering various topics including, without limitation, the following: fair lending/servicing practices; money laundering; FCRA compliance; OFAC (Office of Foreign Assets Control) regulations; mortgage fraud; CFPB regulations; privacy issues; corporate principles; and FDCPA/State collection law compliance. This training occurs annually, with two or three modules required to be completed per quarter. Employees are reviewed on a "Pass/Fail" basis—i.e., they cannot progress until they pass each module. Managers (including Regional Managers) receive the same annual training as junior employees.

SSUMF, ¶¶ 20-24.

Collectors are subject to ongoing supervision and receive regular feedback regarding their job performance. Christensen explains:

> Periodic progress reports are generated by the company's Compliance Department and sent to Regional and Collection Managers to monitor employees' job performance and compliance with training requirements. Employees in the Collections Department also have monthly quality assurance reviews with their supervisors to discuss their performance and areas for improvement. These reviews may be based in part on records of calls that are monitored or recorded by Green Tree—in compliance with state and federal laws—for quality assurance purposes. Additionally, employees' collection activities are subject to audit by Green Tree's Compliance Department at any time. The audits generally occur at random throughout the year. Employees determined to have committed violations of company policies and procedures are disciplined accordingly. Although they have changed over time, the monitoring system and auditing process were and are used as training tools, and employees are made aware of their use in this regard.

SSUMF, ¶ 25.

### 3. The Are No Facts To Suggest That Any of the Employees Involved with Francesca Inzerillo's Account Were Negligently Trained or Supervised.

At the outset, it should be noted that Plaintiffs are not suing Green Tree for negligent hiring of its employees. Well they should not. Several of the employees involved with Ms. Inzerillo's account had long work histories in the area of customer service and/or debt collection prior to employment with Green Tree. SSUMF, ¶ 26. To Green Tree's knowledge, none of the employees involved (including Janelle Hernandez and Renee Martinez, who are specifically identified in the Complaint as employees responsible for Plaintiffs' alleged damages) were involved in incidents of harassment or customer abuse before they were hired by Green Tree or otherwise exhibited a history of unlawful debt collection activity during their experiences in the industry. *See id.* at ¶ 27; Compl., ¶¶ 9-11. Furthermore, none of the employees—especially Hernandez and Martinez—possessed any particular qualities that would have put Green Tree on notice of a tendency to violate the law. *Id.* at ¶ 28.

Christensen's Declaration demonstrates that Green Tree's employees, and particularly its Collectors, are well-trained to perform their job duties. She confirms that "Janelle Hernandez and

1   Renee Martinez, received training substantially consistent with the foregoing summary, *as did the*
2   *other employees involved with this account*." SSUMF, ¶ 29 (emphasis added).

3       Green Tree's employees are also supervised. As Christensen explains, all of Green Tree's
4   Collectors and Collection Managers, including Hernandez and Martinez, are subject to periodic
5   monitoring, auditing and review. SSUMF, ¶ 25. These processes were and are used as training
6   tools, and employees are made aware of their use in this regard. *Id.*

7       Plaintiffs cannot offer any evidence to prove otherwise. In their depositions, each of them
8   unequivocally denied having any information or knowledge to support this claim, including
9   specifically any information about how Green Tree trains and supervises its employees, as well as
10  any information indicating that any of Green Tree's employees involved with the Inzerillo account
11  were unfit to perform their job duties. SSUMF, ¶¶ 31-33. Additionally, Green Tree has
12  propounded written requests to Plaintiffs to produce any and all documents to support the
13  allegation in the Complaint that Green Tree "negligently trained and supervised theirs employees
14  and agents as to the performance of their job duties." Kenney Decl., ¶ 9; Ex. H. Plaintiffs
15  responded by producing documents that actually have nothing whatsoever to do with how Green
16  Tree trains or supervises its employees. *See id*. at Exs. I, J.

17      Also, significantly, none of the Plaintiffs ever complained to Green Tree about *any* of its
18  employees prior to initiating this lawsuit. SSUMF, ¶ 34. And Green Tree was not otherwise
19  aware of any actual or alleged offensive conduct by Hernandez, Martinez or any of its other
20  employees in connection with Francesca Inzerillo's account until this lawsuit was filed. *Id.* at
21  ¶ 31. "Thus, any particular act by [Green Tree's employees] alleged in this litigation . . . cannot
22  be used to impose liability for negligent supervision because there is nothing to suggest that
23  [Green Tree] had actual knowledge or reason to suspect that [its employees] had done anything in
24  violation of the law prior to" this lawsuit. *Garcia v. Fortis Capital IV, LLC*, No. 5:12-CV-06491
25  EJD, 2014 WL 1813295, at *5 (N.D. Cal. May 6, 2014) (granting defendant's motion for partial

26
27
28

1   summary judgment based on nearly identical facts).[8]

2        Plaintiffs' lack of evidence on this issue is enough to grant Green Tree's motion. Fed. R.

3   Civ. P. 56; *Celotex*, 417 U.S. at 325. Besides, as set forth above, Green Tree has demonstrated by

4   undisputed clear and convincing evidence that its employees are adequately trained and supervised

5   regarding compliance with debt collection laws and related consumer protection statutes.

6   Accordingly, the court must conclude that Plaintiff cannot maintain a claim based on negligent

7   training and supervision and enter partial summary judgment in favor of Green Tree as to this

8   cause of action. Fed. R. Civ. P. 56(a).

9   **D.      Green Tree Is Entitled to Partial Summary Judgment as to Plaintiffs' Prayers for
           Punitive Damages in the First and Third Causes of Action Because the Undisputed
10         Facts Do Not Support Liability.**

11        Plaintiffs seek punitive damages in connection with all but the second cause of action (the

12   Rosenthal Act does not allow recovery of punitive damages). Compl., ¶¶ 25, 32, 41, 42, 49.

13   However, there are no specific factual allegations in the Complaint to support these claims, and

14   the evidence does not support Plaintiffs' few conclusory and boilerplate legal allegations. Green

15   Tree is entitled to partial summary judgment as to recovery of punitive damages accordingly. Fed.

16   R. Civ. P. 56(a).

17        **1.      Plaintiffs Cannot Recover Punitive Damages Because There Is No Evidence of
                 Malice, Oppression or Fraud.**
18

19        This Court previously outlined the standard for recovery of punitive damages as follows:

20            The right to recover punitive damages in California is governed by
              Civil Code section 3294, which provides that punitive damages are
21            appropriate where a plaintiff establishes by clear and convincing
              evidence that the defendant is guilty of (1) fraud, (2) oppression or
22            (3) malice. Cal. Civ.Code § 3294(a) ). Under section 3294(c), "a
              plaintiff may not recover punitive damages unless the defendant
23            acted with *intent or engaged in 'despicable conduct.' " In re First
              Alliance Mortg. Co.*, 471 F.3d 977, 998 (9th Cir..2006). "The
24            adjective 'despicable' connotes conduct that is so *vile, base,*

25   _____

26   [8] In *Pasquale v. Law Offices of Nelson & Kennard*, 940 F.Supp.2d 1151, 1155-56 (N.D. Cal.
     2013), the court granted defendant's motion for summary judgment on defendant's bona fide error
27   defense under the Rosenthal Act based defendant's maintenance of training protocols nearly
     identical to those at issue here.

28

> *contemptible, miserable, wretched or loathsome* that it would be looked down upon and despised by ordinary decent people." *Lackner v. North*, 135 Cal.App. 4th 1188, 1210 (2006) (internal quotation marks and citations omitted).[9]

*Inzerillo*, 2014 WL 1347175, at *7. There is no evidence to meet this standard here.

First, even assuming Green Tree committed the acts alleged by Plaintiffs, there is no evidence that the alleged wrongful conduct was "willful"—that is, that Green Tree intended to harm Plaintiffs or engaged in "conscious disregard" of their rights—so as to constitute malice. Cal. Civ. Code, § 3294(c)(1). Actually, the uncontroverted evidence, set forth above, supports a contrary inference.

This is particularly the case with respect to Francesca Inzerillo's claims for violation of the FCRA and CCRAA. The undisputed facts show that Green Tree conducted a thorough and appropriate investigation regarding Ms. Inzerillo's credit dispute, including reviewing account information relevant to the dispute; that Green Tree furnished information to the credit reporting agencies that was true and accurate according to Green Tree's records and reporting policies then in effect; that Green Tree did not intentionally furnish false information to the credit agencies; that Green Tree did not intentionally misstate the status of the account in correspondence with Ms. Inzerillo; and that Green Tree subsequently took steps to modify the reporting at issue in the

---

[9] Section 3294(c) provides:

> As used in this section, the following definitions shall apply:
>
> (1) "Malice" means conduct, which is intended by the defendant to cause injury to the plaintiff or *despicable conduct*, which is carried on by the defendant with a *willful and conscious disregard* for the rights or safety of others.
>
> (2) "Oppression" means despicable conduct that subjects a person to *cruel and unjust hardship* in conscious disregard of that persons' rights.
>
> (3) "Fraud" means an *intentional misrepresentation, deceit, or concealment of a material fact* known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

dispute. SSUMF, ¶¶ 36-43. These facts belie Ms. Inzerillo's self-serving and boilerplate allegations that Green Tree intended to harm her. Moreover, they demonstrate that Green Tree undertook good faith efforts to investigate and address her dispute; that its original reporting was consistent with its reporting policies then in effect; and that any errors in its subsequent response were merely clerical or semantic in nature.

Second, the Plaintiffs cannot offer any evidence that they were subject to oppression—i.e., "cruel and unjust hardship in conscious disregard of" their rights. Cal. Civ. Code, § 3294(c)(2). Again, there is no evidence that anything Green Tree did was intended to harm Plaintiffs. The collection activity alleged by Plaintiffs amounts to nothing more than making phone calls and sending letters, most of which Plaintiffs were free to ignore—and, in fact, did ignore. SSUMF, ¶¶ 8, 15. Based on the evidence, these minor contacts cannot be considered oppressive within the meaning of the statute. As for the alleged credit reporting issues, the evidence shows that whatever mistakes may have been made were certainly were not made in conscious disregard of Francesca Inzerillo's rights, *and she cannot prove otherwise*. *See id*. at ¶¶ 41-42.

Third, and finally, Plaintiffs cannot offer any evidence that Green Tree defrauded Plaintiffs for purposes of Civil Code section 3294(c)(3). They do not even allege that this happened, aside from a single boilerplate allegation in the first cause of action. Compl., ¶ 25 ("Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount according to proof and a finder of fact at trial.").

Absent evidence of oppression, fraud or malice—of which there is none here—Plaintiffs are not entitled to punitive damages. Green Tree is entitled to partial summary judgment on this basis alone. Fed. R. Civ. P. 56(a).

**2. Plaintiffs Cannot Recover Punitive Damages Because There Is No Evidence of Deliberate Intent to Harm.**

At the very least, Plaintiffs cannot recover punitive damages under the third cause of action because that claim is based on alleged negligence, and, as a general rule, recovery of punitive damages requires evidence of intentional misconduct. *See Grieves v. Superior Ct.*, 157 Cal.App.3d 159, 166 (1984). It is true that "punitive damages are available to a plaintiff asserting

a claim of negligence 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.' " *Inzerillo*, 2014 WL 1347175, at *8 (quoting *Allen v. Bayshore Mall*, No. 12–cv–02368–JST (JST), 2013 WL 6441504, at *4 (N.D. Cal. Dec. 9, 2013) (internal citation omitted)). However, for the reasons set forth above, Plaintiffs cannot provide such proof.

Besides, *Allen* cites *Hasson* for the guiding principle that, "[i]n order to justify an award of punitive damages on this basis, the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he *wilfully [sic] and deliberately* failed to avoid those consequences." *Allen*, 2013 WL 6441504, at *4 (quoting *Hasson v. Ford Motor Co.*, 32 Cal.3d 388, 402 (1982)) (internal quotations omitted). Thus, it affirms that evidence of intentional, deliberate disregard for the plaintiff is required to impose liability for punitive damages. The tort of negligent training and supervision does not have such an exacting standard (never mind that Plaintiffs have no evidence to support a claim for punitive damages, regardless of the theory). Green Tree should be entitled to partial summary judgment as to Plaintiffs' prayer for punitive damages—at least in the third cause of action—accordingly. Fed. R. Civ. P. 56(a).

# V.

## CONCLUSION

For the foregoing reasons, Green Tree respectfully requests that the Court grant Green Tree's motion for partial summary judgment on the foregoing issues.

DATED: October 30, 2014

Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation

By:  ___/s/ Austin B. Kenney___
          Austin B. Kenney

Attorneys for Defendant
GREEN TREE SERVICING LLC