UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERASIMO A. INZERILLO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GREEN TREE SERVICING, LLC,<br><br>    Defendant. | Case No. 13-cv-06010-MEJ<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 45 |

## I. INTRODUCTION

Plaintiffs Erasimo, Angela, and Francesca Inzerillo ("Plaintiffs") bring this case against Defendant Green Tree Servicing, LLC ("Defendant") for claims based on Defendant's efforts to collect on a consumer debt. Pending before the Court is Defendant's Motion for Partial Summary Judgment, filed October 30, 2014. Dkt. No. 45. Defendant seeks summary judgment on Plaintiffs' first cause of action for invasion of privacy, second cause of action under the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788-1788.32, and third cause of action for negligent training and supervision. Plaintiffs have filed an Opposition (Dkt. No. 50), and Defendant filed a Reply (Dkt. No. 70). The Court finds this motion suitable for disposition without oral argument and VACATES the December 4, 2014 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for the reasons set forth below.

## II. BACKGROUND

**A.     Factual Background**

Defendant is a mortgage loan servicer. Christensen Decl. ¶ 3, Dkt. No. 49. In December 2011, Defendant began servicing a mortgage loan Francesca Inzerillo obtained from Bank of America, referenced by Account No. 68320768. *Id.*; Sec. Am. Suppl. Compl. ("Compl.") ¶¶ 7-8, Dkt. No. 40. Francesca stopped paying her mortgage in January 2013. Christensen Decl. ¶ 9; Kenney Decl., Ex. A ("Francesca Dep.") at 37:11-17, 53:7-12, Dkt. No. 47-1. Although she disputes whether it was owed to Defendant or Bank of America, Francesca admits that she owed a debt and that she had an expectation that Defendant would call her to try to secure payment of her debt. Francesca Dep. at 180:5-9, 182:8-15.

Plaintiffs Erasimo and Angela Inzerillo are Francesca's parents. Compl. ¶ 4. They were not parties to Francesco's loan with Defendant. *Id.*; Christensen Decl. ¶¶ 6-7; Kenney Decl., Ex. B ("Erasimo Dep.") at 36:22-37:12, Dkt. No. 47-2; Kenney Decl., Ex. C ("Angela Dep.")[1] at 39:19-40:7, Dkt. No. 47-3. Erasimo and Angela have never had an open account with Defendant nor have they otherwise been indebted to the company. Erasimo Dep. at 36:22-37:22; Angela Dep. at 39:19-40:10. Defendant never attempted to collect a debt from either of them nor told them that they owed the company money. Erasimo Dep. at 36:22-37:22; Angela Dep. at 40:11-17.

When Francesca failed to pay by the January 1, 2013 due date, Defendant began calling her. Christensen Decl. ¶ 9. Plaintiffs allege that during January and February 2013, Defendant called Francesca 98 times. Francesca Decl. ¶¶ 2-4, Dkt. No. 68; Price Decl., Exs. 2 (Comcast telephone records, Dkt. No. 58) and 3 (Collection Comment List, Dkt. No. 59). Francesca testified that she did not answer most of Defendant's calls because she was at work. Christensen Decl. ¶ 12; Francesca Dep. at 65:3-12. When Francesca did not answer calls, Defendant reached out to third parties[2], including her parents[3], and her tenant, Deborah Gavina. Christensen Decl. ¶

---

[1] Portions of Angela Inzerillo's deposition are also attached as Exhibit 5 to the Declaration of Jim G. Price, Dkt. No. 61.
[2] Defendant explains that it locates third parties by "skip-tracing," which involves using an outside source or proprietary system to locate the contact by cross-referencing names, addresses or phone numbers believed to have been associated with the customer. Christensen Decl. ¶ 14. Defendant maintains that skip-tracing is a commonly used method in the industry to locate third-party

13. In January and February 2013, Defendant called Erasimo and Angela Inzerillo 12-17 times. Angela Dep. at 17:11-18; Angela Decl. ¶ 6, Dkt. No. 67; Price Decl., Exs. 2-4. Most of the time when Francesca's parents received calls from Defendant, they looked at the caller ID, saw the call was from "Green Tree," and based on that chose not to answer the phone. Angela Dep. at 17:11-18:1; Christensen Decl. ¶ 15; Angela Decl. ¶ 6.

On February 21, 2013, Francesca advised Defendant that she was represented by counsel. Christensen Decl. ¶ 16. Defendant immediately placed a temporary hold on her account until it could verify her representation, which it did five days later. *Id.* It has not placed any calls to Francesca, her parents, or her tenant since February 21, 2013. *Id.* ¶ 16; Francesca Dep. at 56:4-12, 57:16-58:14, 162:1-3.

In or about late May 2014, Defendant received notice of a dispute by Francesca regarding information it reported to the major credit bureaus in connection with her account. Bailey Decl. ¶ 5, Dkt. No. 48. Specifically, Francesca disputed the current balance reported by Defendant: $359,282.00 as of March 31, 2014. *Id.* She maintained that the reporting should reflect a $0 balance because the subject property had been sold at a foreclosure sale in October 2013. *Id.* Defendant responded on June 6, 2014, by sending an Automated Universal Dataform ("AUDs") to the credit bureaus to reflect that the account was in dispute. *Id.* ¶ 9; Ex. A. On June 14, 2014, Defendant sent a letter to Francesca to formally respond to her credit dispute. *Id.* ¶ 10; Ex. B. The letter states: "A foreclosure sale has not yet been completed for the property associated with this account. Thus, you are still obligated for the debt under the terms of the enclosed account. Because the account is still undergoing the foreclosure process, the account remains open." *Id.* The letter further states that "the information reported regarding the above-referenced account is true and correct according to account records." *Id.*

It is undisputed that the foreclosure sale on Francesca's account had been completed as of October 4, 2013. *Id.* ¶ 11. On September 12, 2014 and October 13, 2014, Defendant sent AUDs

---

contacts. *Id.*
[3] Defendant contends that Francesca gave it verbal authorization on December 12, 2011 to contact Angela Inzerillo regarding the account. Christensen Decl. ¶ 8; Ex. A (Collection Comment List). Francesca denies she gave Defendant any such authorization. Francesca Decl. ¶ 13.

3

to the credit bureaus to reflect that the foreclosure was completed and the account closed as of October 13, 2014, reflecting a $0 balance and $0 payment due. *Id.* ¶ 12; Ex. C.

## B.     Procedural Background

Plaintiffs filed this action on December 31, 2013, alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), invasion of privacy, and violation of the Rosenthal Act. Compl., Dkt. No. 1. Plaintiffs filed a Supplemental Complaint on January 24, 2014, to add allegations missing from the original version. Dkt. No. 7. A month later, on February 25, they filed an Amended Supplemental Complaint ("ASC"), dismissing the FDCPA claim and adding two new causes of action for "negligence" and "negligent training and supervision." Dkt. No. 10. They alleged that Defendant's debt collection practices constituted breach of a duty of care allegedly owed them by Defendant in connection with the collection of the alleged debt. ASC ¶¶ 33-39.

On March 12, 2014, Defendant filed a Motion to Dismiss and a Motion to Strike. Dkt. Nos. 11, 12. In the Motion to Dismiss, Defendant argued that the first, third, and fourth causes of action in the ASC for "invasion of privacy by intrusion upon seclusion," "negligence" and "negligent training and supervision" should be dismissed. Mot. to Dismiss at 1. In the Motion to Strike, Defendant requested that the Court strike Plaintiffs' claim for punitive damages because there were no facts in the ASC supporting findings of malice, oppression, or fraud against Defendant. Mot. to Strike at 1.

On April 3, 2014, the Court granted Defendant's Motion to Dismiss as to Plaintiffs' negligence cause of action, finding that Plaintiffs failed to allege the type of duty that California courts find sufficient to state a claim for negligence. Dkt. No. 20. The Court denied Defendant's Motion to Dismiss and Motion to Strike as to all other claims. *Id.*

Pursuant to stipulation, Plaintiffs filed the present Second Amended Supplemental Complaint on July 18, 2014. Dkt. No. 40. Plaintiffs allege the following causes of action: (1) Invasion of Privacy by Intrusion upon Seclusion; (2) violation of the Rosenthal Act; (3) negligent training and supervision; (4) violation of the California Consumer Credit Reporting Act, Cal. Civ. Code § 1785.25 *et seq.* (as to Francesca only); and (5) violation of the Fair Credit Reporting Act,

1   15 U.S.C. § 1681s2-b (as to Francesca only).

2   Defendant filed the present Motion for Partial Summary Judgment on October 30, 2014, seeking summary judgment on Plaintiffs' first through third causes of action. Plaintiffs filed their Opposition on November 13, 2014, and Defendant filed its Reply on November 20, 2014.

### III.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified*

*Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## IV.  DISCUSSION

### A.  Invasion of Privacy

In their First Cause of Action, Plaintiffs allege that Defendant interfered with their right to privacy by "repeatedly and unlawfully attempting to collect a debt," by "repeatedly contacting them and Plaintiff's tenant on this debt," and by "engaging in highly offensive conduct in the course of collecting this debt." Compl. ¶¶ 19-21.  Defendant argues that summary judgment is appropriate because it had a qualified privilege to engage in the sort of conduct at issue.  Mot. at 5. It further argues that there is no evidence to support the conclusion that its conduct with respect to Erasimo and Angela Inzerillo was "highly offensive." *Id.*

An action for invasion of privacy by intrusion upon seclusion has two elements: (1) an intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person. *Smith v. Capital One Fin. Corp.*, 2012 WL 1669347, at *3 (N.D. Cal. May 11, 2012) (citing *Taus v. Loftus*, 40 Cal. 4th 683, 725 (2007); *see also Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."). The intrusion must be intentional. *Capital One*, 2012 WL 1669347, at *3. "In addition, the plaintiff must have had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.* (citing *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998)). Determining the offensiveness of a given intrusion requires consideration of all the circumstances of the intrusion, including its degree and setting and the intruder's "motives and objectives." *Shulman*, 18 Cal. 4th at 236 (citing *Miller v. National Broad. Co.*, 187 Cal. App. 3d 1463, 1483-84 (1986)).

Here, although the parties dispute the number of calls, Plaintiffs have presented evidence that Defendant called Francesca up to 98 times and called Erasimo and Angela up to 12-17 times.

6

1  Francesca Decl. ¶¶ 2-4; Price Decl., Exs. 2-3; Angela Dep. at 17:11-18; Angela Decl. ¶ 6.
2  Plaintiffs have also presented the following disputed evidence regarding the nature of the calls: (1)
3  Defendant's collector Janelle Hernandez threatened that if a payment was not made the locks
4  would be changed on the house, Francesca Decl. ¶ 8; Francesca Dep. at 39:8-9, 65:3-6; (2)
5  Defendant's Director of Collections Rene Martinez threatened that if a payment was not made she
6  would send someone to the property to disturb the tenant, Francesca Decl. ¶ 8; Francesca Dep. at
7  72:24-25, 73:1-5, 150:20-25, 151:1-7; and (3) Rene Martinez threatened that if a payment was not
8  made she would personally see to it that the short sale was denied and the property was foreclosed
9  upon, Francesca Decl. ¶ 8; Francesca Dep. at 67:16-23, 68:21-25, 154:12-18.

As this Court has previously noted, repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion. *Inzerillo v. Green Tree Servicing LLC*, 2014 WL 1347175, at *4 (N.D. Cal. Apr. 3, 2014) (citing *Fausto v. Credigy*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (claim for invasion of privacy adequately stated where defendant made over 90 calls to the plaintiffs' home, refused to identify itself, made harassing statements, and called back immediately after debtor ended call); *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1169 (N.D. Cal. 2003) (debt collector made 200 calls over a 19-month period); *Rowland v. JPMorgan Chase Bank, N.A.*, 2014 WL 992005, at *12 (N.D. Cal. Mar. 12, 2014) (finding plaintiffs stated an invasion of privacy where they alleged that bank representatives contacted them many times over a period of years, were harassing on at least one occasion, and repeatedly threatened plaintiffs with foreclosure); *Panahiasl v. Gurney*, 2007 WL 738642, at *3 (N.D. Cal. Mar. 8, 2007)). Further, the improper conduct in knowingly and intentionally pursuing Plaintiffs to force payment of the alleged debt, whether or not it was owed, gives rise to a right to damages for an invasion of privacy. *Panahiasl*, 2007 WL 738642, at *3.

However, the Court also recognizes that "'[i]n the area of collection practices, a creditor has a qualified privilege to protect its economic interest.'" *Inzerillo*, 2014 WL 1347175, at *4 (quoting *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1468 (1990); *see also Bundren v. Superior Ct.*, 145 Cal. App. 3d 784, 789 (1983) ("When one accepts credit, the debtor impliedly consents for the creditor to take reasonable steps to pursue payment even though it may

7

1    result in actual, though not actionable, invasion of privacy. . . . In the debtor-creditor situation the
2    right of a debtor to privacy is subject to the right of a creditor to take reasonable steps to collect
3    the debt."). "The privilege 'may be lost if the creditor uses outrageous and unreasonable means in
4    seeking payment,' but 'it is not enough that the creditor's behavior is rude or insolent.'" *Id.*
5    (quoting *Symonds*, 225 Cal. App. 3d at 1469). "The 'applicable test is whether or not the creditor
6    goes beyond all reasonable bounds of decency in attempting to collect the debt.'" *Id.* (quoting
7    *Bundren*, 145 Cal. App. 3d at 789).

8    Here, as to Francesca, the Court finds that Plaintiffs have raised a triable issue of fact as to
9    whether Defendant acted reasonably. As discussed above, Defendant called Francesca up to 98
10   times, allegedly threatening to change the locks on the house, send someone to the property to
11   disturb the tenant, and personally see to it that any short sale would be denied and the property
12   foreclosed upon. In light of the common law and statutory proscriptions on abusive debt
13   collection practices, a reasonable jury could find that Defendant's conduct was actionably
14   "offensive" and could find Defendant liable for the tort of intrusion upon seclusion. *See, e.g.,*
15   *Fausto*, 598 F. Supp. 2d at 1056 (finding that the plaintiffs had raised triable issues as to an
16   invasion of privacy claim based on allegations that the debt collector's employees had made more
17   than 90 calls to the debtors' home; that the content of the calls had been harassing; that the
18   employees had failed to identify themselves when calling, and had allowed the phone to ring
19   repeatedly and called back immediately after the debtors hung up the phone); *J.J. MacIntyre Co.*,
20   281 F. Supp. 2d at 1159 (holding that there were triable issues of fact as to whether the plaintiff's
21   privacy was invaded where the debt collector called the plaintiff over 200 times in the course of 19
22   months seeking to collect on a hospital debt). Accordingly, Defendant's motion must be denied as
23   to Francesca's claim.

24   As to Angela and Erasimo, Plaintiffs have shown little more in this matter other than that
25   Defendant called them, albeit on numerous occasions, in attempt to contact Francesca. Plaintiffs
26   argue that the calls were made to embarrass and humiliate Francesca, and that they were highly
27   offensive to Angela and Erasimo. However, Angela testified that Defendant called no more than
28   10-12 times, and that most of the time they would see "Green Tree" on the caller ID and not

answer. Angela Dep. at 17:11-18:1. While Plaintiffs have provided no authority establishing that this call volume is enough to state a claim for invasion of privacy, courts have found that 12-20 calls over a two-month is insufficient to present an issue of fact. *Beard v. Sentry Credit, Inc.*, 2012 WL 3778880, at *5 (E.D. Cal. Aug. 31, 2012).

Further, an allegation regarding call volume "without more is not enough to state a claim for invasion of privacy above a speculative level." *Castellanos v. JPMorgan Chase & Co.*, 2009 WL 1833981, at *10 (S.D. Cal. June 23, 2009). Angela testified that she was not offended by anything the representative said, just the "tone of her voice" because she "was pressing to . . . locate [her] daughter." Angela Dep. at 23:16-22; 48:2-8. Erasimo testified that he felt the calls were offensive, but he could not remember why. Erasimo Dep. at 63:25-64:14. There is no evidence before the Court that the calls to Angela and Erasimo were anything other than attempts to locate Francesca when she failed to return Defendant's calls. Even if Plaintiffs were able to present evidence that Angela and Erasimo were highly offended, the Court notes that they were free to disregard the calls and not even answer since they were able to ascertain that it was Defendant attempting to contact them. *See, e.g.*, *McEndree v. Rash Curtis & Assocs.*, 2012 WL 1640465, at *8 (E.D. Cal. May 9, 2012) ("circumstances where Plaintiff was free to disregard the calls and not even answer since he was able to ascertain that it was [defendant] attempting to contact him" deemed "plainly insufficient to state an actionable invasion of privacy claim").

In support of their argument, Plaintiffs note that Angela and Erasimo are an elderly couple and that Erasimo suffers from congestive heart failure and kidney failure. Opp'n at 5. The Court recognizes that a question of fact can exist when a defendant acts in reckless disregard of a plaintiff's physical condition. *Bundren*, 145 Cal. App. 3d at 791. In *Bundren*, the defendant hospital placed collection calls to the plaintiff, who was a patient at the hospital after having been violently attacked with a machete, while she was still in the hospital. *Id.* at 791-92. The court held there was a question as to whether defendant's conduct, "perhaps reasonable had it been attempted after plaintiff had regained her health, was in fact reasonable in light of her alleged delicate physical and emotional state at the time at issue." *Id.* at 193. Here, Plaintiffs have proffered no evidence that Defendant knew or had reason to know about the Angela and Erasimo's

9

1   age or condition. Thus, this argument is irrelevant. Accordingly, Defendant's motion must be

2   granted as to Angela and Erasimo's claims.

3   Based on this analysis, Defendant's motion is DENIED as to Francesca's invasion of

4   privacy claim and GRANTED as to Angela and Erasimo's invasion of privacy claims.

### B.  Rosenthal Act

In their Second Cause of Action, Plaintiffs allege that the "acts and omissions of Defendants constitute numerous and multiple violations of the Rosenthal Act, including but not limited to California Civil Code §1788.14(b) & 1788.17 by violating [the FDCPA, §§] 1692b(2)(3), 1692d, 1692e, e(2), and 1692f, f(1)." Compl. ¶ 27. Defendant argues that it is not subject to liability under the Act for two reasons. First, it contends that the Rosenthal Act does not apply to Francesca because she was not a California resident when the alleged collection activities occurred. Mot. at 9. However, in their Reply, Defendant withdraws its motion on this ground. Accordingly, Defendant's motion is DENIED as to Francesca's Rosenthal Act claim.

As to Erasimo and Angela, Defendant contends that they lack standing to sue under the Act because they are not "debtors" subject to the Act's protection. *Id.* In response, Plaintiffs argue that certain provisions of the Rosenthal Act protect non-debtors. Opp'n at 12-13. Specifically, Plaintiffs note that section 1788.17 requires debt collectors to comply with provisions of the FDCPA that prohibit a debt collector from engaging in certain conduct with *any person*, not just debtors. *Id.*

The purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). To establish a claim under the Rosenthal Act, a plaintiff "must establish that (1) he is a 'debtor' under section 1788.2(h), (2) the debt at issue is a 'consumer debt' under section 1788.2(f), (3) the defendant is a 'debt collector' under section 1788.2(c), and (4) that the defendant violated one of the liability provisions of the [Rosenthal Act]." *Ansari v. Elec. Doc. Processing Inc.*, 2013 WL 4647621, at *4 (N.D. Cal. Aug. 29, 2013).

The Rosenthal Act defines a debtor as "a natural person from whom a debt collector seeks

1  to collect a consumer debt which is due and owing or alleged to be due and owing from such
2  person." Cal. Civ. Code § 1788.2(h). Thus, Erasimo and Angela lack standing to bring a cause of
3  action under the Rosenthal Act because they are not debtors and are not alleged to have a
4  consumer debt due and owing. *See Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1155 n.3
5  (N.D. Cal. 2007) (finding that the plaintiff did not meet the definition of a debtor where it was
6  undisputed that she did not owe the debt at issue or was otherwise obligated to pay the debt);
7  *People v. Persolve, LLC*, 218 Cal. App. 4th 1267, 1272 n.1 (2013) ("Only the person who owes
8  the debt or is otherwise obligated to pay the debt has standing to assert violations under the
9  [Rosenthal] Act."). Accordingly, Defendant's motion is GRANTED as to Erasimo and Angela's
10 second cause of action for violation of the Rosenthal Act.

### C. Negligent Training and Supervision

In their Third Cause of Action for Negligent Training and Supervision, Plaintiffs allege that "Defendant negligently trained and supervised theirs employees and agents as to the performance of their job duties and as a result of such negligent instruction and supervision, the employees/agents while carrying out their job duties caused injury and damage to Plaintiffs." Compl. ¶ 30. Defendant argues that it is entitled to summary judgment on this claim because the undisputed facts do not support liability. Mot. at 12. Specifically, Defendant argues that its employees are trained to comply with state and federal consumer protection laws, including the Rosenthal Act and the FDCPA, and are consistently supervised in the performance of their collection activities. *Id.* at 13.

In response, Plaintiffs argue that Defendant's own supervisory employees testified that they were not familiar with the Rosenthal Act and therefore could not properly supervise collectors on compliance with it. Opp'n at 14-15. Plaintiffs further argue that Defendant was at least negligent in that it trained its employees to collect in a manner which violated the Rosenthal Act, including skip tracing and start calling third parties on the collection of a debt when the borrower did not answer their call, even though they had current contact information on the borrower. *Id.* at 15.

California law recognizes the theory that an employer can be liable for negligently hiring,

supervising or retaining an unfit employee." *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996). "Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). However, "there can be no liability for negligent supervision 'in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised.'" *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000) (quoting *Noble v. Sears, Roebuck & Co.*, 33 Cal. App. 3d 654, 664 (1973)).

Here, Defendant submits that each of its employees "responsible for collecting delinquent accounts (generally referred to collectively as 'Collectors', but including managers and directors at all levels) undergoes significant training and supervision in the performance of their work." Christensen Decl. ¶ 17. This includes initial training on the manner in which communications with customers and third parties should be conducted, "side-by-sides" in which Collectors shadow Lead Collectors and Collection Managers to field and place calls, online training modules for established and veteran employees, and periodic progress reports and audits generated by the company's Compliance Department to monitor employees' job performance and compliance with training requirements. *Id.* ¶¶ 18-22.

At the same time, Plaintiffs have presented evidence that Rene Martinez (Director of Collections) and Deeanna Glenn (Collection Manager) were not familiar with the Rosenthal Act. Price Decl., Ex. 6 ("Martinez Dep.") at 21:5-7, Dkt. No. 62; Ex. 8 ("Glenn Dep.") at 40:14-19, Dkt. No. 64. Plaintiffs have also presented evidence that Rene Martinez, Deeanna Glenn, and Janelle Hernandez (the collector who is alleged to have threatened to change the locks) all testified that they had been trained to skip trace and start calling third parties on the collection of a debt when the borrower did not answer their call, even though they had current contact information on the borrower. Martinez Dep. at 53:10-22; Glenn Dep. at 66:25-67:13; Price Decl., Ex. 7 ("Hernandez Dep.") at 62:18-63:1-4, 119:8-11, Dkt. No. 63. Under the FDCPA, a debt collector communicating with any person other than the consumer shall "not communicate with any such

1    person more than once unless requested to do so by such person or unless the debt collector
2    reasonably believes that the earlier response of such person is erroneous or incomplete and that
3    such person now has correct or complete location information." 15 U.S.C. § 1692b.  Plaintiffs
4    allege that Defendant called Erasimo and Angela 12-17 times in January and February 2013, and
5    called Francesca's tenant 6 times.  Plaintiffs maintain that these calls were made despite
6    Defendant having current contact information for Francesca, and despite being told not to call.
7    Francesca Decl. ¶ 14; Angela Decl. ¶ 6.  Ms. Martinez and Ms. Glenn both testified that, at the
8    time these calls were made, Defendant's policy permitted calls to unauthorized third parties, even
9    if they knew where the debtor was located.  Martinez Dep. at 53:13-22; Glenn Dep. at 66:18-
10   67:13.  Defendant maintains that even if its employees "may not have been able to distinguish the
11   Rosenthal Act from the alphabet soup of state and federal consumer protection laws, they *were*
12   trained on the Act's requirements—both as independent legal requirements and as part of Green
13   Tree's own policies and procedures—and were subject to oversight regarding their compliance."
14   Reply at 9.  However, viewing the evidence in the light most favorable to them, Plaintiffs have
15   raised a genuine issue as to whether Defendant's employees were trained in violation of the
16   FDCPA and/or Rosenthal Act.

17   Based on this record, a reasonable jury could find Defendant negligently trained its
18   employees.  *See Garcia v. Fortis Capital IV, LLC*, 2014 WL 1813295, at *5 (N.D. Cal. May 6,
19   2014) (finding no liability for negligent supervision where the plaintiff had not produced any
20   evidence to show that the defendant was aware of offensive conduct by its employee while he was
21   working at the firm).  Accordingly, Defendant's Motion is DENIED as to Plaintiffs' negligent
22   training and supervision claim.

23   **D.    Punitive Damages**

24   Plaintiffs seek punitive damages in connection with their first and third causes of action.
25   Compl. ¶¶ 25, 32.  Defendant argues that there are no specific factual allegations in the Complaint
26   to support these claims, and that "the evidence does not support Plaintiffs' few conclusory and
27   boilerplate legal allegations."  Mot. at 16.  In response, Plaintiffs argue that, given the volume of
28   calls along with their evidence of the threatening nature of those calls, a reasonable jury could find

1   clear and convincing evidence of malicious, oppressive or fraudulent conduct, sufficient to support
2   an award of punitive damages.  Opp'n at 17.
3           In California, punitive damages can be awarded "where it is proven by clear and
4   convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ.
5   Code § 3294(a).  Subsection (c) of section 3294 further defines the types of offensive conduct that
6   can support a punitive damages award: (1) "'Malice' means conduct which is intended by the
7   defendant to cause injury to the plaintiff or despicable conduct which is carried on by the
8   defendant with a willful and conscious disregard of the rights or safety of others;" (2)
9   "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in
10  conscious disregard of that person's rights; (3) "'Fraud' means an intentional misrepresentation,
11  deceit, or concealment of a material fact known to the defendant with the intention on the part of
12  the defendant of thereby depriving a person of property or legal rights or otherwise causing
13  injury."  The availability of punitive damages has "been recognized for common law invasion of
14  privacy claims in the context of unlawful debt collection practices."  *Fausto*, 598 F. Supp. 2d at
15  1057 (citing *Sanchez*, 520 F. Supp. 2d at 1164-65).  Punitive damages are also "available to a
16  plaintiff asserting a claim of negligence 'where it is proven by clear and convincing evidence that
17  the defendant has been guilty of oppression, fraud, or malice.'"  *Allen v. Bayshore Mall*, 2013 WL
18  6441504, at *4 (N.D. Cal. Dec. 9, 2013) (quoting Cal. Civ. Code § 3294(a)).
19          Here, considering the evidence in the light most favorable to Plaintiffs, a reasonable jury
20  could find that Defendant's actions provide the basis for an award of punitive damages.  Courts
21  have found that voluminous and harassing debt collection communications can constitute
22  oppression, malice, or fraud within the meaning of section 3294.  For example, in *Fausto*, the
23  court held that a reasonable jury could find clear and convincing evidence of malicious, oppressive
24  or fraudulent conduct, sufficient to support an award of punitive damages, where the defendants
25  made at least 90 phone calls to the plaintiffs' residence.  598 F. Supp. 2d at 1057.  In *Sanchez*, the
26  debtor plaintiffs testified that the defendant debt collector had made dozens of threatening phone
27  calls in pursuit of an alleged debt.  520 F. Supp. 2d at 1164-65.  The court held that the issue of
28  whether the defendant's conduct amounted to oppression, fraud, or malice was a credibility

1 determination appropriately reserved for the ultimate trier of fact. *Id.* at 1165.

2 In this case, Plaintiffs have presented evidence that up to 98 calls were placed to Francesca. Although they dispute the nature and the content of the calls, "[g]iven the volume of calls to Plaintiffs' residence along with Plaintiffs' evidence of the threatening nature of those calls, a reasonable jury could find clear and convincing evidence of malicious, oppressive or fraudulent conduct, sufficient to support an award of punitive damages." *Fausto*, 598 F. Supp. 2d at 1057. Accordingly, Defendant's motion is DENIED as to Francesca's request for punitive damages.

As to Angela and Erasimo, the Court has granted summary judgment in Defendant's favor on their claims for invasion of privacy, and they are therefore not entitled to punitive damages on that claim. As to their third claim for negligent training and supervision, even if Plaintiffs have established a genuine issue of material fact as to whether Defendant's conduct was wrongful, they have not shown that it rises to the level of malice, oppression or fraud. In particular, there is no evidence of malicious intent to harm or fraud on the part of Defendant or the employees named in the Complaint. Cal. Code. Civ. Proc. § 3294(c)(1). Defendant called Angela and Erasimo in attempt to contact Francesca, and Angela and Erasimo testified that they were either not offended by anything the representatives said or could not remember anything the representatives said that was offensive. Accordingly, Defendant's motion is GRANTED as to Angela and Erasimo's claims for punitive damages.

## V. CONCLUSION

Based on the analysis above, the Court hereby GRANTS Defendant's motion as to Plaintiffs Erasimo and Angela Inzerillo's first cause of action for invasion of privacy, second cause of action for violation of the Rosenthal Act, and their claims for punitive damages. The Court DENIES Defendant's motion as to all other causes of action.

**IT IS SO ORDERED.**

Dated: November 24, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

15